SHORT, ADM'X, ETC. *v.* WELLS AND NIBBLETT,
ADM'RS OF THE ESTATE OF BENJAMIN
THOMAS WELLS

[No. 171, September Term, 1967.]

*Decided April 5, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, McWILLIAMS and FINAN, JJ.

*Morton J. Owrutsky,* with whom was *Herman E. Perdue* on the brief, for appellant.

Submitted on brief by *Sanford & Bolte* and *Porter, Cullen & Clark,* for appellees.

HORNEY, J., delivered the opinion of the Court.

The question presented by the appeal in this tort action — arising out of the impact that followed when an automobile skidded across a highway and struck a utility pole—is whether the trial court correctly held that there was insufficient evidence of negligence on the part of the driver to warrant submission of the case to the jury. We think the court erred.

The plaintiff-appellant is Myrtle Wells Short, as administratrix of the estate of Russell William Wells, the surviving widower of Nora Elizabeth Wells, deceased; as next friend of Thomas McFadden Wells and Ida Mae Wells, the minor children of Nora Elizabeth Wells, deceased; and as administratrix d.b.n. of the estate of Nora Elizabeth Wells, deceased. The defendants-appellees are Vileetus E. Wells and Earl E. Nibblett, administrators of the estate of Benjamin Thomas Wells, deceased.

The accident occurred in the early evening of July 5, 1965, on State Route 353, approximately two miles north of Pittsville in Wicomico County. The persons involved in the accident had been to the home of friends near Pittsville and were on their way home on account of an approaching thunderstorm. The automobile was driven by Benjamin Thomas Wells (Benjamin). A friend, Helen Beach Petenbirnk, was riding on the front seat with the driver. Nora Elizabeth Wells (Nora) and Russell William Wells (Russell), her husband and a brother of Benjamin, were riding in the back seat. Benjamin and Nora were killed. Russell was seriously injured. Helen was slightly injured. While taking a curve on the east side of the roadway, the automobile

went out of control, ran off the west side of the road, skidded sideways for a distance of 286 feet, struck a utility pole and overturned on the grass strip adjacent to the shoulder of the road. The concrete-surfaced roadway was 15 feet in width, with 4-foot macadam shoulders and 6-foot grass strips on each side.

At the trial, the plaintiff called all of the witnesses, except the two doctors who testified with regard to the intoxication of the persons who were killed, and also introduced in evidence without objection the deposition of Russell taken by the defendants prior to his suicide sometime later.

The investigating officer (Trooper Van B. Muir, Jr.), besides relating the details of his investigation as to where and how the accident happened, testified that it was raining at the time of the accident; that the road was wet; and that the tires on the automobile appeared to have "little tread" with "little gripping tendency." His investigation also disclosed a pint bottle of whiskey in the automobile with approximately two "shots" missing, some cans of beer lying around the vehicle and an alcoholic odor about the bodies of Benjamin and Nora.

A friend of the parties (Madelyn Donoway) testified that they were at the Donoway home for approximately twenty minutes during which time Russell played the guitar and sang a song with Nora. While they were there no one but the witness had consumed any alcoholic beverage. She broke the seal on a pint of whiskey that Benjamin handed her and consumed a part of its contents. She saw nothing wrong with the condition or driving of Benjamin or any of his passengers.

The passenger in the front seat (Helen Beach Petenbirnk), in testifying as to the operation of the automobile on the date of the accident, stated that she did not see Benjamin have anything to drink either at the Donoways or while driving; that prior to the accident she saw nothing wrong with his driving; that she heard Nora tell Russell to ask Benjamin to slow down; that Nora was "always afraid" and that "if you barely just stepped on the gas she would always yell you were rolling too fast"; and that about the time Russell told Benjamin to slow down the automobile went into a spin. On cross examination, she testified that all four of them had a drink before going to the Donoways but had nothing in the automobile or while they

were visiting; that, although she had not looked at the speed-ometer on the return trip, she thought the automobile was op-erated at a reasonable rate of speed; and that neither Benjamin nor Nora appeared to be under the influence of alcohol.

The pertinent parts of the deposition of Russell, taken at the instance of the defendants, were to the effect that if his brother had been drinking it was not noticeable; that he had not seen him drink anything during the time he was with him; that he was unaware of any whiskey or beer in the automobile; that immediately prior to the accident and before reaching the curve his wife told him to "tell Ben to slow down"; that in doing so, he looked at the speedometer; that it was registering a speed of 80 m.p.h.; that his brother "slowed down a little bit" to what he estimated was a speed of 70 m.p.h. just prior to the accident; that the vehicle went out of control and into a skid; that it had been going "swift" before the complaint of his wife but had been driven all right prior to that time; and that if his brother had been speeding generally that day he would not have ridden with him.

The defendants called two witnesses (Dr. Philip A. Insley, a substitute medical examiner for the county, and Dr. Henry C. Freimuth, a toxicologist in the office of the chief medical ex-aminer for the state). Dr. Insley testified that as a part of his official duties, he submitted specimens of spinal fluid taken from the bodies of Nora and Benjamin to the state medical de-partment and that the specimens indicated that both were in-toxicated. Dr. Freimuth stated that he had run tests on the speci-mens by the county medical department and found that they contained .28% and .25% alcohol, respectively, and that in his opinion one whose spinal fluid showed that amount of alcohol was under the influence and probably drunk.

The other evidence produced by the plaintiff as to the work habits of Russell and Nora and as to the change in the mental state of Russell following the accident is not relevant to the question presented by the appeal.

At the close of all the evidence, the trial court, on the theory that there was insufficient evidence of negligence, granted the motion of the defendants for a directed verdict.

The record indicates that the court was of the opinion that there was such conflict in the testimony of the witnesses the plaintiff had called—the showing of negligence on the one hand and the showing of nonnegligence on the other—as to come within the rule of *Langville v. Glen Burnie Lines,* 233 Md. 181, 195 A. 2d 717 (1963), to the effect that the burden of the plaintiff to prove the negligence of the defendant and that it was the proximate cause of the injuries is not met by proof that the negligence of the defendant may have caused the injuries, or even that it probably did cause them, if it also appears from the evidence of the plaintiff that the injuries may have resulted from some other cause for which the defendant is not responsible. In addition there is some indication that the lower court may have believed that if the defendants' decedent was drunk, then the plaintiff's decedents voluntarily assumed the risk.

The rule relied on by the lower court has been applied many times by this Court—for example, besides *Langville v. Glen Burnie Lines, supra,* see *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 113 A. 2d 405 (1955), *Wasserman v. Hutzler Brothers Co.,* 219 Md. 310, 149 A. 2d 1 (1959), *Joffre v. Canada Dry, Inc.,* 222 Md. 1, 158 A. 2d 631 (1960) and *Dorsch v. S. S. Kresge Co.,* 245 Md. 697, 226 A. 2d 899 (1967)—but it may only be applied in a proper case and this is not such a case.

In determining whether a plaintiff has produced sufficient evidence to go to the jury, it is axiomatic that the evidence produced, as well as all legally permissible inferences drawable therefrom, must be considered in the light most favorable to the plaintiff. *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549 (1965) ; *Ford v. Bradford,* 213 Md. 534, 132 A. 2d 488 (1957). Where direct evidence is presented, a problem as to its adequacy is rarely ever an issue. The question of sufficiency usually arises when proof of negligence is based on circumstantial evidence. This is so because a decision as to an inference raised by the evidence must be made in addition to deciding the credibility of the witnesses in order to decide the ultimate issue. The value of circumstantial evidence depends on the strength and genuineness of the inferences to be drawn therefrom. The court makes

the initial determination on the basis of whether the inference of negligence, *as a generalization,* is more probable than not, and, if it decides that the inference is permissible, it should submit the evidence to the jury to finally determine whether the inference of negligence is more probable than not *in that particular* case. See *2 Harper and James on Torts* § 19.4. In certain situations it has been held that the mere happening of an accident is evidence of negligence because accidents ordinarily do not happen in the absence of a breach of duty and this in and of itself constitutes enough circumstantial evidence to permit an inference to be drawn by the jury in a given case. This is the doctrine of *res ipsa loquitur.* Its application in automobile accident cases depends on the circumstances of each accident. If, however, after relying on *res ipsa,* the plaintiff himself goes on and introduces evidence of nonnegligence or of an independent intervening cause *res ipsa* will not be applied and a verdict must be directed against the plaintiff because the inferences become equally probable and the jury would be left to speculate as to which inference to draw. *Strasburger v. Vogel,* 103 Md. 85, 63 Atl. 202 (1906); *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 96 A. 2d 241 (1953). But if there is a question as to whether the cause is really independent or reasonably foreseeable, the case should still go to the jury. *Moore v. American Stores Co.,* 169 Md. 541, 182 Atl. 436 (1936). Likewise, where *res ipsa* is not relied on, as it was not in this case, and circumstantial evidence of specific acts of negligence is introduced, but the plaintiff goes on and introduces evidence of nonnegligence or of an independent intervening cause, a verdict must be directed against him because the jury is left to speculate as to which inference to draw. *Langville v. Glen Burnie Lines, supra.* But the case at bar is different.

Had the plaintiff introduced only circumstantial evidence of negligence, such as the skidding of the automobile and the presence of whiskey and beer in and around the vehicle, and then presented evidence of nonnegligence or an independent cause, such as the malfunction of the automobile or the unexpected condition of the road, a situation such as arose in *Langville* would be presented. But that is not the case here where there is more than conflicting inferences. Here there is *direct* as well

as circumstantial evidence of negligence. It was therefore a question of fact for the jury and not mere speculation or conjecture as to what to infer. *Bavis v. Fonte,* 241 Md. 123, 215 A. 2d 739 (1966); *Ferguson v. Wootten,* 240 Md. 186, 213 A. 2d 498 (1965). This is not to say that in every case where the plaintiff has introduced some direct evidence of negligence, it should go to the jury. If the direct evidence approaches the outer limit of credibility or, if in some situations, the direct evidence is merely adjectival, it would be insufficient. See *Harper and James, op. cit, supra,* § 19.2; *Miller v. Robinson,* 241 Md. 335, 216 A. 2d 743 (1966).

The direct evidence in this case was given by three witnesses. There were the depositional statements made by a passenger, admitted in evidence without objection by the defendants, to the effect that the driver of the automobile was speeding in violation of Code (1967 Repl. Vol.), Art. 66½, § 211. And there was the direct evidence of the two doctors called by the defendants, who testified that in their opinion the driver was probably intoxicated at the time of the accident in violation of § 206.

To sum up, the trial court relied on the *Langville* rule as the basis for directing a verdict against the plaintiff because, having used the deposition of one passenger (Russell) whose testimony was sufficient to take the case to the jury, she called another passenger (Helen Petenbirnk) whose testimony was contradictory and indicated nonnegligence. In so doing, the court, perhaps because it could not see the forest for the trees, overlooked the fact that the conflict was not in the competing inferences drawable from the circumstantial evidence but in the direct evidence. For that reason, the court should have submitted the evidence to the jury to determine the credibility of the witnesses and the weight to be given the evidence to determine whether or not the driver of the automobile had violated a rule of the road. *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721 (1958). Aside from the positive evidence indicating intoxication, there was other evidence to the effect that the driver did not appear to be intoxicated, which, at least, presented a jury question on the issue of contributory negli-

gence or assumption of risk. See *Baltimore County v. State use of Keenan,* 232 Md. 350, 193 A. 2d 30 (1963).

> *Judgment reversed and case remanded for a new trial; appellees to pay the costs.*