## RICHARDS ET VIR *v.* HUNTT

[No. 409, September Term, 1968.]

*Decided October 13, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Fred C. Sacks,* with whom was *Katherine M. Greene* on the brief, for appellants.

*Edward B. Layne, Jr.,* with whom were *McInerney, Latham & Layne* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This case involves the propriety of the action of a trial judge in granting a motion for a directed verdict in a "traffic light" case at the end of the plaintiffs' case. We shall reverse the action of the trial court.

On July 8, 1967, plaintiffs, George P. Richards, Sr., and Mary C. Richards, his wife, (Richards), were northbound on Connecticut Avenue in Montgomery County. Mr. Richards was driving. They made a left turn onto East-West Highway at its intersection with Connecticut Avenue. Appellee, Michael F. Huntt (Huntt), the defendant in the action brought by Richards in the Circuit Court for Montgomery County, was southbound.

The lights at the intersection are so arranged that an individual northbound on Connecticut Avenue desiring to turn left on East-West Highway would be obliged to wait for a green arrow indicating permission to make a lefthand turn. At that time an individual proceeding south on Connecticut Avenue would be faced with a red light. North and southbound traffic has a green light (or a green "ball" as some of the witnesses called it) for 75 seconds. This is followed by an amber light for three seconds. This in turn is succeeded by the green left turn arrow for 9 seconds (with red for north-south traffic), followed by red in all directions for five seconds.

It was raining at the time of the accident. The speed limit at the point of the accident was 30 miles per hour. One block north the limit was 35 miles per hour. Huntt claimed to be driving at 25 miles per hour, although it is

alleged that he told the officer at the scene that he was traveling 30 miles an hour "prior to the collision".

Connecticut Avenue at East-West Highway is a divided six lane highway. Huntt was in the center of the three southbound lanes. The right front of the Huntt vehicle struck the right rear of the Richards vehicle.

Mr. and Mrs. Richards each testified that Mr. Richards turned on the green arrow. They said the green light changed to amber as they approached. This was succeeded by a green arrow on which they turned.

Huntt, called as a witness for Richards, testified that as he approached the intersection the light showed a "green ball". He said he saw no amber light and was not trying to "beat" the amber light. Huntt claimed that Richards drove slowly in front of him. In response to a question as to whether anything obstructed his view or the view of Mr. Richards immediately prior to the accident, Huntt said, "I had a whole line of traffic to my left that was stopped waiting for a left-hand turn light."

Richards read to the jury the deposition of Miriam Levin, a disinterested eyewitness. She was eastbound on East-West Highway, having stopped for a red light at Connecticut Avenue. Her testimony may be summarized as setting forth observations which would be a sound basis for her statement that she "thought" there was a "green ball" for north and southbound traffic on Connecticut Avenue.

At the conclusion of plaintiffs' testimony Huntt moved "for a directed verdict on the ground that the plaintiff [had] failed to establish a prima facie case of negligence on his part sufficient to permit the submission of the case to the jury." In granting the motion the trial court said in pertinent part:

> "What evidence, therefore, is there of primary negligence on the part of the defendant? As the Court sees it, the only inference of negligence that could be drawn is that if the Court and jury were to believe the testimony of Mr.

Richards that he entered the intersection on a left turn arrow and that, taken with the other evidence in the case, would indicate that a red ball light would be presented to southbound traffic on Connecticut Avenue and that in order for this collision to have occurred, the defendant went through a red light in the process of reaching the point where he collided with the Richards' vehicle.

"The evidence before the Court also permits an inference of equal stature based upon the testimony of Mrs. Levin and of the police officer, * * *. That testimony by Mrs. Levin coupled with the corroborating effect of the police officer's testimony, which came in without objection that his [investigation] revealed that both drivers entered the intersection on a green ball light, supports the inference that it was Mr. Richards' negligence which proximately caused the collision and the resulting damage to the plaintiff Mrs. Richards * * *.

"In short, as the Court views the evidence in this case, it is virtually a classic situation for the application of the rule enunciated in *Langville vs. Glen Burnie Lines* [where] the Court of Appeals said, 'We are confronted by the well-established rule of evidence that the burden mentioned above is not met by proof adduced by the plaintiff to the effect that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears from plaintiff's evidence that the injuries may have resulted from some other cause for which the defendant is not responsible.'

"We think it is plain from the evidence before the Court and jury that the injuries may have resulted from the negligence of Mr. Richards in making a left turn contrary to the requirement of Section 232 of the Motor Vehicle Code,

having entered the intersection, according to the evidence on this point, which is believable, on a green ball light. The Court of Appeals went on to say, in quoting from Judge McSherry in *Strasburger v. Vogel,* 'When the plaintiff himself shows that the injury complained of must have resulted either from the negligence of the defendant or from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury.'

"The Court views the latter portion of that statement as being applicable to the evidence in this case, which permits the inference of Mr. Richards' own negligence in commencing his left turn when he was compelled by law to yield the right of way to any vehicle so close to the intersection as to constitute a danger to him.

"Accordingly, for the reasons stated, and subject always to enlightenment from above, the Court does direct a verdict in favor of the defendant in this case and will inform the jury thereof."

The trial judge, in his reliance on *Langville v. Glen Burnie Lines,* 233 Md. 181, 195 A. 2d 717 (1963), and his quotation from *Strasburger v. Vogel,* 103 Md. 85, 91, 63 A. 202 (1906), misunderstood their application. This case presents almost precisely the same circumstances which were presented in *Ferguson, Adm'x v. Wootten,* 240 Md. 186, 213 A. 2d 498 (1965), which case arose from a collision at the intersection of Truitt Street and U. S. Route 50 in Salisbury. There was direct conflict in the testimony as to which vehicle had the green light. The appellant there relied on *Langville, supra,* and contended that the jury should not have been allowed to speculate on which version was correct. Judge Oppenheimer said for the Court:

"In *Langville*, the testimony, all offered by the plaintiffs, was that the accident was caused either by the negligence of the driver of the defendant's bus or by a sudden and unexpected brake failure which a reasonable inspection or test of the brakes would not have revealed. We held that the lower court was correct in granting a motion for a directed verdict in favor of the defendant. The case, we found, was governed by the rule that the burden upon the plaintiff to prove affirmatively the defendant's negligence and that it was a proximate cause of the injuries is not met by proof adduced by the plaintiff that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears that the injuries may have resulted from some other cause for which the defendant is not responsible. There was no direct testimony in *Langville* that the defendant's negligence, rather than the brake failure, was a proximate cause of the accident. Here, the situation is different. There was direct contradictory testimony that Bailey was negligent and that he was not. As was indicated in *Baltimore Transit Co. v. Presberry,* 233 Md. 303, 308, 196 A. 2d 717 (1964), the evidence in *Langville* permitted several equally probable inferences. Here, neither the appellee's testimony nor that of her witness, Mrs. Nock, rested on inference. There was a sharp conflict in their testimony as to whether Bailey entered on the red or the green light. This was a question of fact, not of inference, and as such was properly left to the determination of the jury. In *Langville*, the question was not which testimony was correct, but whether, on all the testimony offered by the plaintiffs, the cause of the accident was the negligence of the defendant's driver or the exculpatory failure of

the brakes. The testimony left the cause of the accident a matter of conjecture, not, as here, an issue of fact. No one, in *Langville,* testified that the defendant's driver was negligent and that his negligence was the proximate cause of the injuries. In this case, the appellee, in effect, testified that Bailey was not negligent but another of her witnesses testified that he was. The issue left to the jury was not a speculative choice between the possibilities inherent in the only testimony offered but a determination of the truth in direct, unspeculative testimony of witnesses who differed as to what had happened." *Id.* at 190-91.

In *Short v. Wells,* 249 Md. 491, 240 A. 2d 224 (1968), Judge Horney, for the Court, again explained the proper interpretation of *Langville,* stating:

"Had the plaintiff introduced only circumstantial evidence of negligence, such as the skidding of the automobile and the presence of whiskey and beer in and around the vehicle, and then presented evidence of nonnegligence or an independent cause, such as the malfunction of the automobile or the unexpected condition of the road, a situation such as arose in *Langville* would be presented. But that is not the case here where there is more than conflicting inferences. Here there is *direct* as well as circumstantial evidence of negligence. It was therefore a question of fact for the jury and not mere speculation or conjecture as to what to infer. *Bavis v. Fonte,* 241 Md. 123, 215 A. 2d 739 (1966); *Ferguson v. Wootten,* 240 Md. 186, 213 A. 2d 498 (1965). This is not to say that in every case where the plaintiff has introduced some direct evidence of negligence, it should go to the jury. If the direct evidence approaches the outer limit of credibility or, if in some situations, the

direct evidence is merely adjectival, it would be insufficient. See [2] *Harper and James* [*on Torts*], § 19.2; *Miller v. Robinson,* 241 Md. 335, 216 A. 2d 743 (1966).

\* \* \*

"To sum up, the trial court relied on the *Langville* rule as the basis for directing a verdict against the plaintiff because, having used the deposition of one passenger (Russell) whose testimony was sufficient to take the case to the jury, she called another passenger (Helen Petenbirnk) whose testimony was contradictory and indicated nonnegligence. In so doing, the court, perhaps because it could not see the forest for the trees, overlooked the fact that the conflict was not in the competing inferences drawable from the circumstantial evidence but in the direct evidence. For that reason, the court should have submitted the evidence to the jury to determine the credibility of the witnesses and the weight to be given the evidence to determine whether or not the driver of the automobile had violated a rule of the road. *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721 (1958)." (emphasis in original) *Id.* at 496-97.

A correct and recent application of the *Langville* rule is found in *Larsen v. Romeo,* 254 Md. 220, 255 A. 2d 387 (1969).

We cannot state the rule anymore succinctly than it was stated by Judge Horney in *Short v. Wells, supra.* The conflict here was in direct evidence. Both Mr. and Mrs. Richards testified that Mr. Richards proceeded on the green arrow. Richards would have been entitled to an instruction to the jury that if it found from the evidence that Huntt entered the intersection at a time when the automatic traffic signal was red for him and when there was a green arrow for Richards, then as a matter of law the verdict should be returned in favor of Richards.

*Clemons v. Bullock,* 250 Md. 586, 598, 244 A. 2d 240 (1968) ; *Thompson v. Terry,* 245 Md. 480, 226 A. 2d 540 (1967) ; and *Eastern Contractors v. State,* 225 Md. 112, 169 A. 2d 430 (1961). The court should have submitted the evidence to the jury to determine the credibility of the witnesses and to determine whether Huntt entered the intersection in violation of the law.

> *Judgment reversed and case remanded for a new trial, costs to abide the final result.*