## JOHN LEWIS TIPPETT ET AL. *v.* HELEN M. QUADE, ADMINISTRATRIX, ETC.

[No. 831, September Term, 1972.]

*Decided August 28, 1973.*

50

The cause was argued before MORTON, MOYLAN and SCANLAN, JJ.

*Hal C. B. Clagett* and *John A. Buchanan*, with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellant Patricia L. Quade. *Jacob S. Levin*, with whom were *David Levin* and *Levin & Levin* on the brief, for appellant John Lewis Tippett.

*Donald P. McLaughlin* for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellant, John Lewis Tippett, appeals from a judgment in appellee's favor entered in a motor vehicle wrongful death action, one of two cases growing out of the same accident

which were consolidated for trial below. The first case, *John Lewis Tippett v. Patricia L. Quade* was filed as Law No. 6962 in the Circuit Court for Charles County. In that case, the jury returned a verdict in favor of the defendant, Patricia L. Quade, from which Tippett did not appeal. The second case was designated in the Circuit Court for Charles County as *Helen M. Quade, Individually and as Administratrix of the Estate of Carroll Patrick Quade, a Minor, Deceased v. John Lewis Tippett and Patricia L. Quade,* Law No. 6967. Both cases were heard before a jury on August 22nd and 23rd, 1972, with Judge James C. Mitchell presiding.

In case No. 6967, the jury returned a total verdict of $60,000 in favor of the appellee against the appellant and Patricia L. Quade. A remittitur was entered in the case of Helen M. Quade, suing in her capacity as administratrix, in the amount of $8,800, resulting in a total verdict in favor of the appellee, Helen M. Quade, individually and as administratrix, in the amount of $51,200. The appellant and Patricia L. Quade noted timely appeals from that judgment. Although Patricia L. Quade is nominally an appellant in this Court, she supports the position of the appellee on the basic issue presented on this appeal to which we refer immediately below.[1]

## THE QUESTION PRESENTED

The appellant advances ten claims of alleged error in the proceedings below. Because our disposition of one of his points requires reversal of the judgment against the appellant, it is not necessary to reach his nine other contentions. The basic issue which we consider on this appeal is whether the trial court improperly applied the "boulevard rule" by allowing the jury to consider whether

---

1. A second contention advanced by Patricia L. Quade as an appellant was put to rest by our recent decision in Barrett v. Charlson, 18 Md. App. 80, 305 A. 2d 166 (1973). There, this Court held that in an action for wrongful death of a minor child brought by her parents, the latter were not limited in their claims for damages for mental anguish, emotional pain and suffering only to the period when the deceased child would have reached her twenty-first birthday. Patricia L. Quade's claim to the contrary in this Court was abandoned by her counsel during the course of oral argument.

the appellant, the favored driver, was guilty of contributory negligence rising to the level of a concurring proximate cause of the accident in which the appellee's 13 year old son, a passenger in the car driven by the unfavored driver, Patricia L. Quade, was killed. The appellant raised this contention in motions for directed verdict submitted at the close of the appellee's case and again at the conclusion of all the evidence. The trial judge reserved ruling on the last motion. Following the jury's verdict, he denied it. For the reasons stated below, however, we find that the trial court erred in not granting appellant's motion for a directed verdict, in that the evidence demonstrated that it was the negligence of Patricia L. Quade in suddenly backing out onto the main highway which was the proximate cause of the accident in which the decedent was killed, and that there was no evidence to support a finding that the appellant, the favored driver under the "boulevard rule," could have avoided the tragic accident, or that any alleged negligence on his part constituted a concurring proximate cause thereof.

In holding that the trial court erred in denying appellant's motion for a directed verdict, we are mindful that the evidence and the reasonable inferences to be drawn from it must be considered in the manner most favorable to the appellee. *I.O.A. Leasing Corp. v. Merle Thomas Corp.*, 260 Md. 243, 249, 272 A. 2d 1 (1971). We find, however, in this case that there was no rational basis in the evidence upon which the jury could have returned a verdict against the appellant and so reverse the judgment against him. *Lusby v. First National Bank*, 263 Md. 492, 506, 283 A. 2d 570 (1971). We turn now to a presentation of the facts from which we have drawn that conclusion.

## THE FACTS

The accident out of which this case arose took place at approximately 4:15 P.M. on February 25, 1970, on Maryland Route 5, in St. Mary's County. Route 5 is a four lane divided highway running generally north and south. The accident took place at a point on the outside (curb), southbound lane of Route 5 as it passes Wood's Foodland Store.

Moments before the accident, the appellant was proceeding south in the outside lane, driving a 1970 heavy-duty pickup truck. The back of the truck was loaded with a thousand pounds of sand and gravel, an outboard motor, and forty-seven large chimney blocks, weighing approximately one hundred pounds each. At that time the posted speed limit on Route 5 at the point of the collision was fifty-five miles an hour.

Tippett testified that he was traveling at a speed of approximately forty-five to fifty miles an hour when a car driven by Patricia Quade suddenly backed out in front of him "like a deer running across the road." On seeing the Quade car loom up in front of him, the appellant braked his truck and turned the wheel to the left toward the inside, southbound lane in an attempt to avoid the collision. Tippett testified that Patricia Quade's vehicle was in the middle of the road when his truck hit it. The truck struck her car at a slight angle and then careened to the left, eventually going through the wall of a building on the left side of the median strip which divides Route 5. As a result of the collision, Carroll Patrick Quade, the minor son of the appellee and brother-in-law of Patricia Quade, was killed. Mrs. Quade was not seriously hurt. Tippett was knocked unconscious and suffered substantial injuries, some of a permanent nature.

Patricia Quade testified at trial that she had come to the Wood's Foodland Store on the day of the accident in order to return some soda pop bottles. She testified that she pulled up to the store with the front of her car pointing northward at a slight angle. The deceased, Carroll Quade, went in the store to inquire where he should deposit the empty bottles. Learning that the bottles should be dropped off in the rear of the store, he came back out and reentered the car and sat in the right front seat. Mrs. Quade testified that she then backed away from the front of the store towards Route 5 approximately 20 feet, stopped, looked in both directions and saw the appellant's truck approaching some 1100 or 1200 feet north on Route 5 heading south. Then, according to her testimony, she shifted out of reverse, took her foot off the

brake and put it on the accelerator. At that moment, she claimed, the appellant's truck hit her car, "just a few seconds" after she first saw it approaching. She testified that when the crash took place "we went sliding down the road," but she was unable to say how far down the road her car was pushed as a result of the impact.

John Douglas Browning was an eyewitness to the accident. He testified he was standing in front of the store very near the spot where Patricia Quade had parked her car. Browning stated that Mrs. Quade then backed her car up so that her rear wheels were in the middle of the traveled portion of Route 5 when the accident occurred. Browning stated that a very short moment of time ensued from when Mrs. Quade backed her car out of the lot, onto the roadway and in front of appellant's truck until the moment of the impact.

Robert Eugene Cooper, Jr., was another eyewitness to the accident. He was riding his bicycle down Route 5 when he saw Mr. Tippett's truck traveling south on the roadway, proceeding about the same rate of speed as the other cars moving on the road. He testified that the Quade vehicle backed out in front of appellant's truck and in doing so moved out over the shoulder of the road onto the traveled portion of the roadway.

Dorothy D. Taylor testified that she was parked outside of Wood's Foodland Store on the day of the accident. She knew Mrs. Quade and saw her car parked on the lot. She testified that she saw Mrs. Quade back away from the front of the store toward the highway. She stated that Mrs. Quade stopped backing up just prior to reaching the shoulder of the road. At that moment, Mrs. Taylor said, one of the children in the back of her car asked her something and she turned her head to see what the child wanted. At that moment she heard the impact of the crash, but did not actually see the accident take place. She was unable to say whether Mrs. Quade had continued to back up after stopping just before reaching the shoulder of the road.

The deposition of Robert Thomas Kleinpaste, a witness for the appellee, was read into evidence over the objection of the

appellant, the latter claiming that Mr. Kleinpaste was a resident of Maryland, had been duly served but had not elected to appear. In his deposition, Kleinpaste testified that a truck similar to the appellant's passed him on Route 5 traveling at a speed of approximately 70 miles an hour. Kleinpaste also testified on deposition that as the truck passed him and proceeded south, it was weaving from side to side and kicking up dust from the shoulder of the road. Shortly after the truck had passed him, Kleinpaste turned off Route 5 and did not see the actual collision because his view was obstructed by a rise in the road, although he claimed to have seen debris flying through the air. He testified that when he last observed the appellant's truck, it was in the southbound righthand lane.

State Trooper Walter Biscoe testified that he found wet marks, debris and skid marks reaching at least six feet into the traveled portion of the roadway. He said that the skid marks began on the white line which separates the inside and outside lanes and continued to the rear of Patricia Quade's car which had been pushed down the road from the point of impact. It was Biscoe's opinion that the accident occurred at a point at least six feet out from the shoulder and in the traveled portion of the roadway. He also stated that the appellant had been seriously injured in the accident and had to be carried from the scene.

Trooper Biscoe later observed the appellant lying on the x-ray table at St. Mary's Hospital. Biscoe stated that appellant had a strong odor of alcohol upon his breath, was talking incoherently, and had urinated on himself while lying on the table in a semi-conscious state. A hospital record, dated February 25, 1970, the day appellant was admitted, contained a notation by a nurse that there was "alcohol odor on breath." Doctor David Mossman, who saw the appellant on February 26, 1970, the day after the accident, testified that at that time appellant was still talking incoherently and mumbling, but that any alcohol consumed 24 hours earlier could not explain those symptoms.

The appellant denied that he had been drinking prior to

the accident, but did admit that on the morning of the accident he had a glass of cold wine at home prior to breakfast. Trooper Biscoe, who inspected the appellant's truck after the accident, found three empty bottles of beer and one full bottle of beer on the floor on the passenger's side and also a pint of port wine which was about one quarter full. On cross examination, appellant denied that he had stopped in a liquor store in New Market, Maryland to purchase alcoholic beverages on the day of the accident. This testimony was later contradicted by the testimony of one of the employees of the liquor store who stated that on February 25, 1970 the appellant had been in the store and had purchased a bottle of port wine.

Forrest A. Daniel, who testified as a rebuttal witness for the appellee, stated, contrary to the testimony given by Patricia Quade, that visibility from the point where Mrs. Quade was parked in front of the store, looking northward up Route 5 in the direction from which the appellant was approaching on the day of the accident, was restricted to approximately 300 feet because of a hill which substantially limited visibility.

THE TRIAL JUDGE DID NOT APPLY THE BOULEVARD RULE PROPERLY: APPELLANT'S MOTION FOR DIRECTED VERDICT IN HIS FAVOR SHOULD HAVE BEEN GRANTED

There is no dispute with the general proposition that in ruling on a motion for directed verdict the trial court must assume the truth of all credible evidence on the issue and of all inferences fairly deducible therefrom, and must consider them in the light most favorable to the party against whom the motion is made. *Miller v. Michalek*, 13 Md. App. 16, 17, 281 A. 2d 117 (1971). Nevertheless, this "is not to say that in every case where [a party] . . . has introduced some . . . evidence of negligence, [the case] . . . should go to the jury. If the direct evidence approaches the outer limits of credibility . . . it would be insufficient." *Short v. Wells*, 249 Md. 491, 497, 240 A. 2d 224 (1968); *Richards v. Huntt*, 255 Md. 255, 261, 257 A. 2d 412 (1969); *see*

*also* 2 *Harper and James on Torts,* § 19.2 (1956). Applied here, the principle adverted to in *Short v. Wells, supra,* requires the conclusion that there was insufficient evidence to support any claim by Patricia Quade that the accident occurred on the shoulder and not in the traveled portion of Route 5.

It is true that Patricia Quade testified that she backed up to the shoulder of the road, but she also testified that after she was hit she was pushed down the *road,* although she could not remember how far. We find her testimony uncertain, if not equivocal. At no time did she testify that the crash took place on the shoulder of Route 5. Marshalled against this inconclusive testimony is the uncontroverted physical evidence, supplied through Trooper Biscoe's testimony, that the accident took place at a point six feet out in the traveled portion of the curb lane, and the testimony of two disinterested eyewitnesses that the crash occurred in the traveled portion of the roadway. In *Short v. Wells, supra,* the Court of Appeals stated that where a party's evidence "approaches the outer limits of credibility" it will be deemed insufficient for purposes of determining a motion for a directed verdict. In Maryland, as elsewhere, "courts retain the power to set the limits of what is credible evidence." *Harper and James, supra* at 1064. Thus, for example, in *Baril v. New York, New Haven & Hartford Railroad Company,* 90 Conn. 74, 96 A. 164 (1915), the Connecticut Supreme Court refused to accept as sufficient to support a verdict the *ipse dixit* testimony of a plaintiff who claimed that he was hurt when he fell on unlighted stairs while he was passing from the ticket office of the defendant's railway station under its tracks through a subway up to the platform on the far side of the tracks where he intended to take a train. Opposed to plaintiff's statement was testimony by six disinterested witnesses that a half hour before the claimed accident, the plaintiff was lying drunk on the platform on the near side of the tracks some 200 feet from the stairs in question. Under those circumstances, the Connecticut court held that the plaintiff's evidence was insufficient to support a verdict in his favor.

We believe that the unsupported and uncertain testimony of Patricia Quade "approaches," if indeed, it does not exceed, "the outer limits of credibility . . . ." *Short v. Wells, supra* at 497. In either event, it was insufficient to serve as a basis for permitting the jury to speculate that the accident might have taken place on the shoulder and not on the traveled portion of the road.[2] We turn then to the "boulevard rule" issue on which this case ultimately turns.

The so-called "boulevard rule" is legal shorthand for the judicial construction afforded the several requirements imposed upon drivers entering or crossing through highways, as these are set out in Article $66^{1}/_{2}$, §§ 11-401, 402, 403 and 404 of the Code.[3] In essence, the rule requires vehicles approaching a through highway from an unfavored road to stop and yield the right-of-way to all traffic already in, or which may enter, an intersection of the through highway and the unfavored road during the entire time the unfavored driver approaches upon the right-of-way. *Creaser v. Owens*, 267 Md. 238, 240, 297 A. 2d 235 (1972). In the *Creaser* case, the Court of Appeals acknowledged that despite the consistency of its many previous opinions construing the "boulevard rule," there "have apparently been lingering doubts about the absoluteness of its application . . . ." The Court then went on to express the

---

2. Although it plays no part in our determination as to whether or not the trial court erred in denying appellant's motion for directed verdict, it should be noted that the jury must have concluded that the accident occurred in the traveled portion of Route 5. If the collision had taken place on the shoulder of the road, the jury could not have returned a verdict against Patricia Quade, since, in such circumstances, the cause of the accident would have been Mr. Tippett's leaving the roadway and crashing into her.

3. Section 11-404 is the statutory provision specifically relevant in this case. It provides: "(a) The driver of a vehicle about to enter or cross a highway from a private road or driveway shall stop and yield the right-of-way to all vehicles approaching on the highway. (b) The driver of a vehicle entering a paved public highway, which is hereby defined to be a highway having a hard smooth surface composed of gravel, shells, crushed stone, paving blocks, asphalt, concrete or other similar substances, from an unpaved public highway shall stop and yield the right-of-way to all vehicles approaching on the paved public highway." The section is construed and applied in the same manner as the other so-called "boulevard sections" of the Motor Vehicle Code. Craig v. Englar, 11 Md. App. 146, 151, 273 A. 2d 224 (1971).

hope that its decision in *Creaser* would "finally remove all doubts about the rule's application and discourage the belief that there are other exceptions not already recognized by our case law." *Id.* at 240-241. Unfortunately, the instant case belies the hope expressed by the Court of Appeals and suggests that some "lingering doubts" may yet remain on the part of trial courts, lawyers and litigants as to "the absoluteness of its application." *Ibid.*

Thus, the appellee and the nominal appellant, Patricia Quade, argue in this Court, that the evidence in this case was sufficient to submit the question of appellant's contributory negligence to the jury, because there was testimony indicating that he was exceeding the speed limit and there was evidence permitting the inference that he had been drinking alcoholic beverages prior to the accident. Appellant, on the other hand, contends that the Court of Appeals' holding in *Creaser* and other applicable decisions have dispelled any doubt that in a "boulevard rule" situation it is the unfavored driver who must be held negligent as a matter of law, unless the doctrine of last clear chance obviates that negligence or there is presented "the rare case" where the evidence would support a finding that the favored driver was "guilty of negligence that was a *proximate* cause of the accident," *Creaser v. Owens, supra* at 245, evidence which he argues is lacking in this case. (Emphasis added.)

In the instant case, the appellee represents a third party, the deceased passenger, and not one of the two drivers involved in the accident. That makes no difference. The principles which surround application of the "boulevard rule" are the same in such a case as those to which the court would look if the suit were one involving a favored driver and an unfavored driver alone. *See, e.g., Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961); *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349 (1946).

Review of the applicable "boulevard rule" decisions permits the following settled conclusions concerning its correct application:

1. The unfavored driver must stop and yield the

right of way to all traffic in, or which may enter, the intersection of a through highway and unfavored road during the entire time he encroaches upon the right of way. *Creaser v. Owens, supra* at 240.

2. This duty continues as long as the unfavored driver is in the intersection and until he either becomes a part of the flow of the favored traffic or subsequently traverses the boulevard. *Roberts v. Fairchild,* 14 Md. App. 612, 617, 287 A. 2d 778 (1972); *see also Cornias v. Bradley,* 254 Md. 479, 496, 255 A. 2d 431 (1969).

3. When the "boulevard rule" is applicable and an accident occurs, the unfavored driver must be held to be negligent "as a matter of law," unless his conduct is rescued by application of the doctrine of last clear chance. *Creaser v. Owens, supra* at 245; *Trionfo v. Hellman,* 250 Md. 12, 18, 241 A. 2d 554 (1968); *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939).

4. In a suit against the unfavored driver, the latter is always liable *"except in a rare case* when the issue of contributory negligence on the part of the favored driver is properly submitted to a jury, *i.e.,* whether he was guilty of negligence that was a *proximate* cause of the accident." 267 Md. at 245 (emphasis added).

5. The rigorous duty which the "boulevard rule" lays upon the unfavored driver "is not excused by claims of excessive speed on the part of the favored driver . . . ." *Id.* at 248; *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 359, 121 A. 2d 188 (1956).

6. If, in order to find the favored driver contributorily negligent, the jury must indulge in "nice calculations of speed, time and distance," it is improper to submit that issue to

it. *Harper v. Higgs, supra* at 36. *Brown v. Ellis,* 236 Md. 487, 495, 204 A. 2d 526 (1964).

7. If the contention is that the favored driver could have avoided the collision but for inattention to his driving and to the peril which immediately confronted him on the roadway, there must be positive evidence of such inattention or lack of due care, evidence not bottomed on "nice calculations," etc. *Harper v. Higgs, supra* at 37. *Pinchbeck v. Baltimore Tank Lines, Inc.,* 258 Md. 211, 265 A. 2d 238 (1970).

Application of the above stated principles to the facts of the instant case forces the conclusion that Patricia Quade alone should have been held liable for the accident in which the deceased was killed. She backed blindly and suddenly out onto a high speed roadway where she was hit by appellant's oncoming pick-up truck. There is not a shred of evidence from which to argue the doctrine of last clear chance. She committed an egregious breach of the "boulevard rule" and her negligence in this regard continued up to the moment of impact. *Oddis v. Green,* 11 Md. App. 153, 159, 273 A. 2d 232 (1971); *Roberts v. Fairchild, supra* at 619. In addition, the record is devoid of any evidence from which to maintain the appellant could have avoided the collision. He testified that Mrs. Quade's car backed out into the road in front of his truck "like a deer" and his testimony to this effect is corroborated by an eyewitness.

The issue then is reduced to the appellee's claim, in which she is supported by Patricia Quade, that there was sufficient evidence of contributory negligence on the part of the appellant to permit the jury to return a verdict against him, as well as against Patricia Quade. We think not. As we said above, there was no evidence introduced to show that appellant could have avoided the collision. The fact that there was testimony that he was going 70 miles an hour in a 55 miles an hour zone does not suffice, *Creaser v. Owens, supra* at 248, for there is no evidence to indicate that the

appellant could have avoided the collision if he had been traveling within the posted speed limit. In order to hold the appellant liable any negligence on his part must constitute a concurring *proximate* cause of the accident. *Id.* at 245; *Brown v. Ellis*, 236 Md. 487, 495, 204 A. 2d 526 (1964).

It is true that there was evidence which suggests that the appellant had been drinking some alcoholic beverages (wine and beer) on the day of the accident. In *Cooper v. Allen*, 243 Md. 9, 219 A. 2d 920 (1966), the Court of Appeals found an unfavored driver negligent for failing to keep a lookout while proceeding through an intersection when he was struck by a speeding and "alcoholically stimulated" driver. *Id.* at 15. Thus, even if we were to assume *arguendo* that the appellant was driving under the influence of alcohol at the time such a fact, in itself, would not make his conduct a proximate cause of the accident, where there is no evidence demonstrating that the appellant could have avoided crashing into Mrs. Quade's vehicle as it suddenly emerged from the parking lot. Moreover, as the trial court conceded, even though he erroneously gave an instruction to the jury about driving a motor vehicle while under the influence of alcohol,: "There was no evidence that he [the appellant] was under" the influence of intoxicating beverages at the time of the accident.

The cases on which the appellee and Mrs. Patricia Quade rely in arguing that the evidence was sufficient to support the jury's verdict against the appellant are quite distinguishable. *Harper v. Higgs, supra,* involved a situation where the unfavored car had come out on the favored highway and stalled under a blinking caution light at the intersection. One of the passengers in the favored car testified that she saw the stalled vehicle ahead on the highway but the driver, who was talking with the other passengers at the time, did not see, and indeed never saw, the stalled car until the moment of impact. In upholding a verdict for a passenger-plaintiff against both the favored and unfavored driver, the Court of Appeals observed that on such facts, without any "nice calculations of time, speed and distance," the jury could have found from all the testimony

that the driver of the favored car might have avoided the accident, either by stopping or taking other preventive action if she had been maintaining a proper lookout. *Id.* at 36. In the case at bar, the jury could only have reached a result adverse to the appellant by indulging in the type of "nice calculations of time, speed and distance" adverted to in *Harper v. Higgs, supra.* Moreover, such an exercise on the part of the jury is doubly impermissible under the facts of this case. Even if we were to assume that the appellant was driving at 70 miles an hour at the time Mrs. Quade's car darted out onto the highway, there was no evidence from which the jury could (a) either reasonably calculate the time which elapsed from the moment when appellant should have seen the Quade car and the occurrence of the accident, (b) reasonably estimate the distance between the two vehicles when Mrs. Quade backed out into the southbound lane into the path of the appellant's car, or (c) fairly determine whether or not, on the basis of such attenuated calculations of time and distance, the appellant had a reasonable opportunity to avoid the fatal collision.

Nor can the appellee find succor in *Pinchbeck v. Baltimore Tank Lines, supra.* That case involved a suit by the favored driver who was admittedly either drunk to the point of being semi-conscious, or suffering from temporary amnesia, while traveling 80 miles an hour down the highway. Dead ahead of him at the time was a "huge" well lighted, tractor-trailer truck which was slowly crossing the intersection. Pinchbeck slammed into the truck broadside. Actually, the evidence in *Pinchbeck* established that not only was the favored driver contributorily negligent, but also that, had he been awake and alert to the large, slow moving peril down the road, he would have had a clear chance to avoid the accident. The instant case does not permit application of either the last clear chance or contributory negligence doctrines. Unlike Pinchbeck who was in a completely drunken stupor, could remember nothing about the accident, or even remember seeing the tractor-trailer truck as it slowly crossed the highway while he bore down on it at approximately 80 miles an hour, the appellant testified precisely as to how the

accident occurred and his testimony was supported by two disinterested eyewitnesses.

Appellant, Patricia Quade, professes to find support in *Brown v. Ellis, supra.* That case also involved a large tractor trailer which was proceeding through an intersection against the favored traffic flow. The 48 foot truck had half way cleared a 36 foot, one way highway when it was struck by Brown, the favored driver. On those facts the Court of Appeals held that it required "no nice calculation of time, speed or distance to permit an inference that the appellant is not keeping a proper lookout . . . ." *Id.* at 496. *Brown v. Ellis,* said the Court of Appeals, was one of those "rare instances in which the conduct of the favored driver was properly subject to the jury's determination of its reasonableness and prudence under the circumstances." *Id.* at 497; *Harper v. Higgs, supra* at 34.

The Court of Appeals and this Court have articulated frequently the basic purposes of the "boulevard rule" and have admitted the harsh results which on occasion flow from its strict application. *See, e.g., Creaser v. Owens, supra.* If the rule is to be changed, however, it is the Legislature's business to do so and not that of the courts. Until the General Assembly legislates to the contrary, it is the duty of the trial and appellate courts of this State, as the Court of Appeals consistently has attempted to do, "jealously" to guard and uphold the favored driver's right of way on the favored boulevard. *Creaser v. Owens* at 243. This duty was slighted by the court below. Because the evidence was virtually uncontradicted that the accident had occurred on the traveled roadway of Route 5 and not on the shoulder of the road, the trial judge should have granted the appellant's motion for directed verdict, since, as we have stated, there was no evidence from which the jury could have inferred that any negligence on his part was a concurring proximate cause of an accident which he could not have avoided. To reach a contrary result would be to carve out an unwarranted exception to the "boulevard rule," *i.e.,* that evidence of speed above the posted limit, plus the consumption of alcoholic beverages on the part of a favored

driver prior to the accident, is sufficient to permit a finding of contributory negligence on his part. Reversing our decision in *Owens v. Creaser*, 14 Md. App. 593, 288 A. 2d 394 (1972), the Court of Appeals, quoting from Judge Gilbert's dissent in this Court, admonished against "carving out an exception to the boulevard rule where, in fact, none exists." 267 Md. at 241. In refusing to overturn the jury's verdict against the appellant, the court below failed to heed that admonition. We must and we do.

> *Judgment against appellant, Patricia L. Quade, affirmed; judgment against appellant, John Lewis Tippett, reversed; one half of the costs to be paid by the appellee and one half to be paid by Patricia L. Quade.*