## DOUGLAS THOMAS REDMILES, Personal Representative of the Estate of Douglas Thomas Redmiles, Jr. *v.* CLARA W. MULLER, Administratrix, etc., et al.

[No. 209, September Term, 1975.]

*Decided December 3, 1975.*

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*Frederick J. Green, Jr.*, with whom were *G. Joseph Sills, Jr.*, and *Lord, Whip, Coughlan & Green* and *Lansdale G. Sasscer, Jr.*, and *Foster H. Fanseen* on the brief, for appellant.

*William R. Hymes*, with whom was *John C. Corbley* on the brief, for appellee Robert Dean. *Edward P. Camus*, with whom were *Camus & Perry* on the brief, for other appellees.

MOORE, J., delivered the opinion of the Court.

This appeal involves the application of Maryland's Boulevard Rule to a motor vehicle accident in which the

favored driver and his passenger were killed when his vehicle struck the automobile driven by the unfavored driver while it was obstructing the boulevard. Appellant, the personal representative of the deceased favored driver, contends that it was error for the trial court, in a wrongful death action by the survivors of the deceased passenger, to submit the issue of the favored driver's alleged negligence to the jury.

I

The fatal two-car crash which claimed the lives of Douglas Thomas Redmiles, Jr., age 18, and his passenger, Terry Ann Moore, age 16, occurred on January 14, 1972 at 11:35 p.m. on U.S. Route #1, just north of the Town of Savage, in Howard County. Thomas and Terry Ann were enroute home from a private social event, Thomas driving in the right southbound lane in his 1966 Plymouth Barracuda. On their left and slightly in front, in the other southbound lane, was a 1965 Chevrolet Impala operated by William E. Welte, age 17½, who had been to the same social gathering and who had known "Tommy" Redmiles for some three years.

At about the same time, a dark green 1965 two-door Chevrolet sedan was being operated northbound on Route #1 by Robert E. Dean, age 26, accompanied by a passenger, Sandra Wells, age 32. Dean and Miss Wells had spent some time earlier in the evening at the Laurel Hotel in Laurel where each resided. Originally intending to go southbound to a night club in Bladensburg, they had reversed their course and as they drove northbound and neared the Red Rooster, a bar and restaurant and package store located on the west side of Route #1, north of its intersection with Patuxent Range Road, they decided to "drop in." This necessitated Dean's making a left turn, across the southbound lane to a parking space at the Red Rooster. He negotiated the turn and proceeded into a parking space in front of the establishment — only to discover that the cars on either side were parked at angles, so that the space could not accommodate the front end of his vehicle. He therefore backed out onto Route #1, perpendicular to the southbound

traffic lanes. He testified that his car was equipped with a stick-shift and that, as he backed out, the engine stalled.

Route #1 is a four-lane undivided highway, the northbound and southbound lanes being separated by double yellow stripes. It is relatively level in front of the Red Rooster but some 400 feet north of the front door of the establishment is the crest of a hill.

At about the time Mr. Dean was attempting to enter and then to exit the parking space, the Redmiles and Welte automobiles were ascending the hill to the north. Upon clearing the crest, both drivers apparently saw Dean's car in the right southbound lane. At approximately the same time, each driver forcefully applied his brakes as shown by the length of the skid marks left by the respective vehicles: Redmiles, 234 feet and Welte, 200 feet. After skidding, Welte's Impala fortuitously veered to the left, traversing both northbound lanes, and the car and driver came to rest, unscathed, at a service station located on the other side of the highway, opposite the Red Rooster.

The same good fortune did not attend Tommy Redmiles and his passenger, Terry Ann Moore. After skidding forward in its own lane, the Redmiles Barracuda turned at least partially perpendicular to its own path and slid sideways another 35 feet (from the end of the 234 foot skid mark) until it struck Dean's car broadside. Both vehicles were totally wrecked and two other cars parked in front of the Red Rooster were substantially damaged. Tommy and Terry Ann were killed instantly. Robert Dean and Sandra Wells survived.[1]

At the time of impact, according to the testimony of State Trooper Lawrence E. Faries, Jr., Mr. Dean's dark green Chevrolet was between 4 and 6 feet onto the paved portion of the right southbound lane on Route #1. Dean himself testified [2] that 3 to 4 feet of the rear of his vehicle was in the southbound lane just before impact. William Welte testified

---

1. Miss Wells did not appear as a witness at the trial and the record contains no explanation for her absence.

2. Mr. Dean was called by the plaintiffs below as an adverse witness.

that "most of" Dean's car was blocking the right of the two southbound lanes.

The speed limit at the time was 50 miles per hour. When interviewed by a State trooper on the night of the accident, Welte estimated his own speed at 45 to 50 miles per hour and that of Redmiles at 55 to 60. When he was interviewed the following day these estimates were increased to 50-55 for himself and 65-70 for Redmiles. At the trial he stated, "I still feel it was 50 miles an hour." Dean's answer to an interrogatory propounded by the plaintiffs with reference to the speed of the Redmiles vehicle, was read to the jury by plaintiffs' counsel. Dean had responded that the Redmiles vehicle "appeared to be travelling at a speed at least 80 miles per hour when he first observed it and a speed of approximately 50 miles an hour when it first struck the two parked vehicles." [3]

Clara W. Muller and Robert E. Moore, as parents of Terry Ann Moore, and Clara W. Muller, as administratrix, brought suit against Douglas T. Redmiles, individually,[4] and as personal representative of his son's estate and against Robert E. Dean. After a jury trial on December 17, 18, 20, and 23, 1974, judgments for plaintiffs were rendered in the following amounts against both defendants:

$50,000 to Mrs. Muller as Terry's mother
$ 5,000 to Mr. Moore as Terry's father
$1,768.60 to Mrs. Muller as Terry's administratrix.

Douglas Redmiles appeals from those judgments on alternative grounds. He first charges that the Boulevard Rule required that the trial court direct a verdict in his favor and that its failure to do so requires us to reverse without a new trial. His alternative contention is that even if no grounds for absolute reversal lie, the trial court's

---

**3.** Dean explained that the answer to the interrogatory had been prepared by his attorney and that it was based not only upon Dean's version of what had occurred but also on information supplied to him or to his attorney. Counsel for appellant Redmiles objected to the reading of the response as self-serving but the court permitted it under Maryland Rule 413.

**4.** Without objection, a directed verdict in favor of Mr. Redmiles individually was granted at the close of plaintiffs' case.

instructions to the jury were so prejudicial as to require a new trial.

Robert Dean took no appeal and, indeed, urges that the judgment below be affirmed. He contends that the Boulevard Rule is not applicable under the facts and circumstances of this case and also that the lower court did not err in its instructions. Appellees Muller and Moore, on the other hand, concede the applicability of the Rule but contend that, within its parameters, there was a violation by the favored driver of a duty to exercise reasonable care for the safety of his passenger. They also argue that the court's instructions were not erroneous.

We conclude that the Boulevard Rule was applicable and that there was no evidence of negligence on the part of the favored driver which was the proximate cause of the collision. The lower court erred therefore in refusing to grant a directed verdict in favor of appellant Redmiles. We find it unnecessary to consider the question of alleged error in the trial court's instructions.

## II

Mr. Dean's contentions with respect to the claimed inapplicability of the Boulevard Rule are stated in his brief as follows:

> "In the case at bar, there is no evidence that an intersection or any proximity thereto is involved, nor could the Dean vehicle be construed as an 'unfavored entering driver'. He was clearly attempting to exit from the boulevard and not enter thereon."

As Judge Scanlan observed for this Court in *Tippett v. Quade*, 19 Md. App. 49, 309 A. 2d 481 (1973), the Boulevard Rule is "legal shorthand for the judicial construction" of the requirements imposed upon drivers entering or crossing "through highways," as set forth in Code Art. $66^1/_2$, §§ 11-401 through 11-404. As in *Tippett*, the statutory provision specifically relevant in this appeal is § 11-404 which provides:

"(a) The driver of a vehicle about to enter or cross a highway from a private road or driveway shall stop and yield the right-of-way to all vehicles approaching on the highway.

"(b) The driver of a vehicle entering a paved public highway, which is hereby defined to be a highway having a hard smooth surface composed of gravel, shells, crushed stone, paving blocks, asphalt, concrete or other similar substances, from an unpaved public highway shall stop and yield the right-of-way to all vehicles approaching on the paved public highway."

The fact situation here, it should be noted, is similar to that presented in *Tippett*, where we held the Boulevard Rule clearly applicable. There, the unfavored driver, Patricia Quade, parked in front of a food store in order to return some empty beverage bottles. Learning that the bottles had to be delivered to the rear, she backed away from the front of the store towards the highway, Route 5. We found the evidence insufficient to support any claim by Patricia Quade that the accident occurred on the shoulder and not in the travelled portion of Route 5 — an issue not here present — and held that "boulevard section" 11-404 governed the case.

That section is construed and applied in the same manner as the other so-called boulevard sections of the Motor Vehicle Code. *See, Grue v. Collins*, 237 Md. 150, 205 A. 2d 260 (1964); *Craig v. Englar*, 11 Md. App. 146, 151, 273 A. 2d 224 (1971). The "absoluteness" of the application of the Boulevard Rule to unfavored vehicles entering upon through highways was underscored by the Court of Appeals in the familiar case of *Creaser v. Owens*, 267 Md. 238, 297 A. 2d 235 (1972) where the Court sought to "discourage" the belief that there are "exceptions not already recognized by our case law;" and, more recently in the case of *Hensel v. Beckward*, 273 Md. 426, 330 A. 2d 196 (1974) wherein the Court was, to its dismay, "once again . . . faced with a case in which the application of the Boulevard Rule is sought to be avoided." Judge Digges, writing for the Court, stated:

"Like the Rock of Gibraltar we remain firm and

will not allow the legislative mandates contained in this right-of-way statute to be judicially either bypassed or otherwise eroded through new waves of attack." At 427.

In the instant case, it is manifest that appellee Dean's contentions with respect to the alleged inapplicability of the Boulevard Rule are untenable. It is abundantly clear that although he had exited from the boulevard, he had actually re-entered it at the time the collision occurred, and according to his own testimony, he was unaware that there were parking facilities on the north side of the Red Rooster and intended to re-cross the highway to park on the other side. Neither is there any substance to the claim of Mr. Dean that the Rule does not apply because there was no evidence of an intersection or any proximity thereto. As Judge Lowe stated for this Court in *Victor A. Pyles Co. v. Rehmann*, 21 Md. App. 686, 321 A. 2d 175 (1974): "The existence of an intersecting street is not a condition to recovery but rather an indicium of whether the road in question is a 'boulevard' .... We find no exception indicating impunity for those who enter or cross a boulevard from fields or other curbs where no roadway intersects." Judge Lowe then went on to state in language strikingly appropriate here:

"It is inconceivable that a rule which has as its primary purpose to expedite the movement of traffic on designated highways, and its concomitant purpose to assure the safety of drivers of motor vehicles, could be interpreted to expedite traffic only at intersections and to protect motorists only at cross roads, but not between them." (p. 691)

### III

Since the Boulevard Rule applies, in order to find that the favored driver was negligent there must be positive evidence of inattention or lack of due care which is not based on "nice calculations of speed, time and distance." *Harper v. Higgs*, 225 Md. 24, 36, 169 A. 2d 661 (1961); *Brown v. Ellis*, 236 Md. 487, 495, 204 A. 2d 526 (1964); *Pinchbeck v. Balto. Tank*

*Lines, Inc.*, 258 Md. 211, 265 A. 2d 238 (1970). Exactly such calculations would be necessary here. Appellee Muller maintains that Redmiles could have avoided the collision by moving "no more than four feet, in a distance of four hundred feet," and that "[h]ad . . . Redmiles been driving at the speed limit this accident would never have occurred." It is well settled that a favored driver's alleged excessive speed does not excuse an unfavored driver from his duty to yield the right-of-way to the favored driver. *Hensel v. Beckward, supra,* at 427; *Creaser v. Owens, supra,* at 248; *Sun Cab Co. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956). As to the possibility that Redmiles could have avoided the collision in the manner proposed, this is exactly the kind of calculation proscribed. To require that Redmiles dodge the Dean vehicle would be to disregard the fundamental purpose of the Boulevard Rule — to promote the free and unobstructed flow of vehicular traffic on thoroughfares.

Concerning the applicability of the Boulevard Rule to a suit by a passenger against the favored driver appellee Muller correctly but incompletely notes from *Sun Cab Co. v. Hall,* 199 Md. 461, 467, 86 A. 2d 914 (1952), that:

> "It is true that the driver on a boulevard is not obliged to anticipate that someone will negligently come into his path, but he is not excused from liability to his passengers if someone does come in, and he fails to avoid a collision because he did not look in time to see what was inevitable."

Chief Judge Marbury's next sentence was:

> "There is testimony in the case before us . . . which would permit the jury to find that had the cab driver been looking, he could have seen the other car entering the intersection, and he could . . . have avoided the accident, . . ."

The distinction here is readily apparent. It is clear that Redmiles saw the Dean vehicle in the road before him and that as soon as he observed the unfavored vehicle he applied his brakes but was unable to avoid the accident. Another

leading case relied upon by both appellees is similarly distinguishable. In *Harper v. Higgs, supra,* the Court of Appeals affirmed a finding of negligence on the part of the favored driver who had failed to observe the unfavored vehicle stalled under a blinker which showed a flashing amber signal to the favored driver. There, the favored driver was talking with passengers in her car and never saw the stalled vehicle until the moment of impact. The Court of Appeals upheld a verdict for a passenger-plaintiff against both the favored and unfavored drivers, observing that without any "nice calculations of time, speed and distance," the jury could have found from all the testimony that the driver of the favored vehicle might have avoided the accident if she had been maintaining a proper lookout. In the instant case there was no showing that Redmiles was inattentive and the jury could only have reached a result adverse to him by indulging in the type of "nice calculations" to which the Court referred in *Harper v. Higgs, supra.*

Finally, the contention of appellee Muller in brief and oral argument that the interposition, as a party-plaintiff, of a passenger in the favored vehicle alters the application of the Boulevard Rule is unsupportable. As Judge Scanlan pointed out in *Tippett v. Quade, supra,* at 59, where the plaintiff was the personal representative of a deceased passenger (in the unfavored vehicle), "the principles which surround application of the 'boulevard rule' are the same. . . ." A favored driver is under no requirement to anticipate that an unfavored driver will disregard the legislative mandate and except in "rare cases" the *proximate cause* of the accident is the unlawful intrusion of the unfavored car — and not the favored driver's speed, *Sun Cab Co. v. Cusick, supra;* nor his drinking and speeding, *Tippett v. Quade, supra;* nor speeding and operating at night without lights, *Hensel v. Beckward, supra;* nor, indeed, the combination of *all* of those elements, *Johnson v. Dortch,* 27 Md. App. 605, 342 A. 2d 326 (1975).

There was no rational basis in the evidence and the reasonable inferences to be drawn therefrom, considered in the light most favorable to appellee Muller, upon which the jury could have returned a verdict against appellant's

314

decedent, the favored driver. *Wood v. Abell,* 268 Md. 214, 230, 300 A. 2d 665 (1973).

> *Judgment against appellant reversed; costs to be paid by appellees.*