## STATE, Use of HOPKINS, et al. *v.* MARVIL PACKAGE COMPANY et al.

[No. 159, October Term, 1952.]

*Decided July 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frederick W. C. Webb,* with whom were *G. Elbert Marshall and Webb, Bounds & Travers* on the brief, for the appellants.

*Thomas G. Andrew* for the appellees.

SOBELOFF, C. J., delivered the opinion of the Court.

For the first time the Court is called on to rule upon the legal significance of a flashing amber traffic signal at an intersection of two highways.

About 11:15 P.M. on the dark, dry night of October 26, 1951, William Brent Hopkins was fatally injured in a collision between the car in which he was riding and a tractor-trailer, at the intersection of Routes 50 and 331 in Easton, Talbot County. The companion of the deceased, Gosnell, was driving his own car at a high rate of speed, on Route 331, in a westerly direction, shortly after both had been drinking. Route 331 is an unfavored road; and Route 50, having been designated as a boulevard by the State Roads Commission, is a favored artery. Traffic at the intersection on the former is warned by a continuous flashing red traffic signal, and on the latter by a continuous flashing amber traffic signal. Instead of coming to a complete stop as he approached the intersection, Gosnell drove through it at a speed estimated by himself at 40 to 50 miles per hour, at a higher speed according to a state trooper who examined the skid marks of Gosnell's car and found them 56 feet long. Unfortunately for the deceased, a tractor-trailer weighing over 14 tons, traveling northerly on Route 50, also attempted to negotiate the intersection at the same time. The car hit the middle of the trailer's right side. Skid marks of the truck, starting south of the intersection, measured 43 feet into the intersection. From the point of the collision, the truck travelled 206 feet before coming to rest. Hopkins was

thrown clear of the vehicle and died of the resulting injuries. His survivors, a wife and three infant children, brought suit under Lord Campbell's Act.

Verdict for a large amount and judgment have been rendered against Gosnell, who did not appeal. Marvil Package Company and John Culver, owner and operator of the truck, respectively, were joined, and from directed verdicts in their favor, the plaintiffs appealed. The paramount question on this appeal is whether or not actionable negligence is attributable to the two appellees.

As to Gosnell, there is no question of his patently gross negligence. But the appeal here is on the theory that Culver's alleged negligence was likewise a factor producing the disaster and that consequently the trial court erred in directing a verdict for the truck driver and his master.

Plaintiff argues that deceased met injury due to the concurrent negligence of the joint tort feasors, *i.e.*, both Gosnell and Culver, including of course the Marvil Company under the doctrine of *respondeat superior*.

We quote from the testimony of one of the two state troopers called by the equitable plaintiffs, appellants here, as to the view afforded approaching vehicles: "There was a considerable open space between the two roads as the intersection was approached from the south and the east. Travelers on Route 50, when 624 feet south of the intersection, had a clear and unobstructed view of travelers on Route 331, for 495 feet east of the intersection, and when 275 feet south of the intersection, the same vision of travelers on Routh 331, for 830 feet east of the intersection."

Since Gosnell's headlights were burning, and Culver's view of them was unobstructed, appellants contend that Culver should have seen the lights and upon observing the speed with which Gosnell approached the intersection, should have slowed down. They urge that the flashing amber light imposed upon users of the favored artery a duty to exercise caution in approaching an intersection. Further, appellants contend that the lawful speed was

limited to 30 miles per hour by Article 66½, Sec. 176(c) of the *Annotated Code of Maryland* (1951). This fixes the maximum speed at 30 miles per hour on ordinary highways in the outlying or not thickly settled parts of cities, towns or villages. To this the defendants reply that the only signs posted by the State Roads Commission in the area concerning speed set a limit of 50 miles per hour.

It appears that the town of Easton had only recently extended its boundary to take in the State highway at this point. The law of Maryland thus presents an anomaly which may be productive of confusion and harm in that the State Roads Commission is empowered to build a high speed highway and post signs accordingly; yet if the corporate limits of a nearby town are extended to include a portion of that highway, the Code automatically reduces the permissible speed. Only the State Roads Commission is authorized to post speed signs along roads which it constructs and maintains. Moreover, Sec. 176(c) seems to impose an automatic reduction in the speed limit even in sparsely settled territory if it is incorporated into the town limits, regardless of the State Roads Commission's judgment as to the necessity for such reduction.

However this may be, it would not be reasonable to charge a driver with notice of a change in the speed limit which has been effected by expansion of town boundaries but which is contradicted by the road sign. We hold that in determining whether he acted prudently or negligently the driver is to be judged as if the speed limit were as posted by the public authorities.

Culver testified that he had been traveling 40 to 45 miles per hour until he approached the intersection. Without applying the brakes he then released the accelerator, slowing down to 35 miles per hour, the speed which he maintained upon entering the intersection. Testifying further that he saw no lights whatsoever, except the flashing amber signal, until an instant before the collision, he said, "I saw them [Gosnell's headlights]

flash in my cab." He readily admitted that he had not looked up or down Route 331, but that he had confined his attention to the stretch of road in front of him.

The legislature has enacted Article 66½, Sec. 160, *Annotated Code of Maryland* (1951) which reads as follows:

"(Flashing Signals). Whenever flashing red or amber signals are used they shall require obedience by vehicular traffic as follows:

(1) Flashing red (Stop Signal). When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.

(2) Flashing amber (Caution Signal). When an amber lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

The above statute prescribes separately the rule of conduct for drivers facing flashing red and amber signals at an intersection, but the existence of the red light for the one determines to a degree the caution to be exercised by the other who is confronted with the amber light. Cases dealing with this subject matter are to be found in other jurisdictions. While not expressly spelled out in all, there is implicit in most of them the theory that a driver on a through street when approaching an intersection controlled by amber and red flashing signals must exercise a caution commensurate with the prudence of a reasonable man—that he has no absolute right of way. See *Rhoades v. Finn,* 288 Mich. 262, 284 N. W. 720; *McGowan v. City of Los Angeles* and two related cases, 100 Cal. App. 2d 386, 223 P. 2d 862, 21 A. L. R. 2d 1206; *Stabler v. Copeland,* 304 Mich. 1, 7 N. W. 2d 122.

When the State has erected an amber signal to regulate traffic on a through highway, we think it not unreasonable to find its purpose is to exact from the users

of a highway a caution higher than is to be expected in the absence of such a signal. So to hold does not diminish or render ineffectual the utility of the modern through highway. Nor does it mean that a user of the highway cannot assume that drivers will stop in compliance with stop signs. It means merely that one should not proceed through such an intersection oblivious to it. It does mean, as the statute plainly says, that an amber light is a warning to proceed cautiously, and if the facts show that an accident has occurred due to a failure to take heed of such an admonition, when a collision could have been averted by exercising caution, then liability may be imposed upon the user of the favored artery. While the driver on the main artery may ordinarily rely on the vehicle approaching from his right or left stopping as required by the red light, yet if the circumstances indicate that the approaching vehicle will not stop, then a duty arises on the part of the favored driver to avoid an accident if he can. He cannot proceed in complete disregard of obvious danger.

Beyond this more cannot be said—for a hard and fast standard of conduct cannot be fashioned from the word "caution" any more than can the meaning of its converse, the word "negligence", be defined with exactitude.

Nothing in *Belle Isle Cab Co. v. Pruitt*, 187 Md. 174, 49 A. 2d 537, conflicts with what is said here. In that case this Court refused to emasculate the section of the Motor Vehicle Law which gave preference to the driver on the favored highway. It recognized that normally he could rely on approaching vehicles coming to a stop and yielding the right of way before entering the intersection. The Court, however, added this significant statement, "The recitals in Section 1 of Article 66½ of the Code, as codified, would seem to negative any implication that the statute was designed to change the established law of negligence so as to relieve the favored driver of all duty to use care. But in determining due care, the assumption that the unfavored driver will stop

and yield the right of way is an important factor." Nor was this doctrine novel, for it had been applied in earlier cases, *Rinehart v. Risling,* 180 Md. 668, 26 A. 2d 411, and *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888, 136 A. L. R. 1485. See also *Sun Cab Co. v. Hall,* 199 Md. 461, 86 A. 2d 914.

In neither case is there any implication that the favored driver is absolved of all duty of caution. On the contrary, the Court enumerated the various circumstances, which taken together with the fact that the defendant was on a favored highway, were relevant on the question of negligence. So interpreted, we adhere to the *Pruitt* decision and apply its rule here.

Whatever might be said under other circumstances of a motorist's failure to look to right or left in going through an intersection, it is plain from the facts disclosed in this record that Culver's behavior was not a contributory cause of the accident and there is no basis for a contrary finding. We think the proximate cause of the collision was Gosnell's violation of the stop signal. *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194; *State, to Use of Frizzell v. Gosnell,* 197 Md. 381, 79 A. 2d 530. Ordinarily questions of proximate cause are for the jury, but they can be so clear as to be determinable by the Court. *Blinder v. Monaghan,* 171 Md. 77, 188 A. 31; *Madge v. Fabrizio,* 179 Md. 517, 20 A. 2d 172; *Belle Isle Cab Co. v. Pruitt, supra.*

Conceivably cases may arise where failure of the driver on the favored highway to look will properly raise a question for the jury as to whether, if he had looked, he could have prevented the accident. We do not prejudge such cases. We need not, and we do not, go so far as to declare that going into an intersection under an amber light is never actionable negligence and can never be a concurrent cause of a collision. The undisputed facts here convince us, however, that the negligence of Gosnell was so prominent, overwhelming and decisive that it would be sheer speculation for a jury to declare that Culver's conduct was a contributing cause.

Finding no actionable negligence on the part of the appellees it is unnecessary to discuss the question whether Hopkins was guilty of contributory negligence as a matter of law, or whether Gosnell's negligence could be imputed to him under circumstances which we have not detailed because not necessary for the decision of the case.

*Judgment Affirmed, with costs.*