AARON G. ROBERTS and HONORA ROBERTS *v.*
JOHN W. FAIRCHILD and JACK AMATUCCI
CHEVROLET, INC.

[No. 412, September Term, 1971.]

*Decided March 6, 1972.*

The cause was argued before ANDERSON, THOMPSON and CARTER, JJ.

*Aaron M. Levine,* with whom were *Thomas J. Scanlon* and *Levine & Scanlon* on the brief, for appellants.

*Albert D. Brault,* with whom were *Brault, Scott & Brault* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

This case is another involving the application of the Boulevard Rule. (Md. Code, Art. 66½, § 233, 196. Since January 1, 1971, it is now covered by Art. 66½, §§ 11-204 and 11-403). Suit was brought by Aaron G. Roberts and Honora Roberts, his wife, the appellants, for damages sustained as the result of an automobile collision with a car driven by John W. Fairchild and owned by Jack Amatucci Chevrolet, Inc., appellees. At the conclusion of the appellants' case, the trial judge granted a motion for directed verdict on the basis that Mrs. Roberts was guilty of contributory negligence as a matter of law precluding submission of the case to the jury. In accordance with *Mazer v. Stedding,* 10 Md. App. 505, 271 A. 2d 381 and Md. Rule 552, we narrate the evidence in a light most favorable to the appellants who are entitled to all reasonable and legitimate inferences which may be deduced from the evidence.

At about midnight on November 11, 1967, appellant

614

Honora M. Roberts left her home in Silver Spring, driving a white 1967 or 1968 Plymouth automobile, owned by her and her husband, to pick up their daughter and her friend who had attended a social event at a nearby high school. She proceeded in an easterly direction on Oakview Drive and, after a short distance, reached its intersection with New Hampshire Avenue. New Hampshire Avenue runs in a north-south direction; it is divided by a concrete median strip; and it has three lanes plus a turn or "storage" lane in each direction. The lanes were 12 feet in width, except for the right lane which measured 10 feet. The posted speed limit for traffic on New Hampshire Avenue was 40 miles per hour. The weather was clear, dry and cold. The intersection was controlled by a traffic signal flashing amber for north-south New Hampshire Avenue traffic and flashing red for east-west Oakview Drive traffic.

Prior to entering the intersection, Mrs. Roberts stopped and checked traffic in both directions. There were a few cars going southbound and when they passed, Mrs. Roberts looked to her right and noticed a car in the storage lane, but saw no other northbound traffic. She testified that the view to the south of this intersection is limited by the crest of the hill to a distance which she could not estimate in feet, but described as a "good long block." Other than the car stopped in the storage lane, there were no other northbound vehicles and thinking the car in the storage lane was waiting for her to cross, Mrs. Roberts proceeded to the middle of the intersection. The vehicle in the storage lane blocked her view of northbound traffic, so before entering the second half of the intersection, she stopped and checked northbound New Hampshire Avenue traffic again. When she saw the way was clear, she proceeded to cross. Mrs. Roberts testified she could see only to the crest of the hill and saw no approaching traffic, "nothing," and, knowing that the distance was great enough to clear the intersection if a car should come over the hill even slightly above the speed limit, she went ahead. The collision occurred in the in-

tersection. Before the impact, Mrs. Roberts did not see the car that struck her, did not see headlights approaching, nor did she hear the sound of the car. Her car was damaged on the right rear.

The investigating police officer designated the point of impact as being in the center lane of the three northbound New Hampshire Avenue lanes, 15 feet 4 inches west of the east curb, and 7 feet 6 inches north of the south curb of Oakview Drive. From that point the appellees' red Chevelle travelled a wavering route, on and off the street, before it reached its resting point 219 feet away. The Roberts' vehicle travelled 54 feet to the point where it hit the curb, and then another 70 feet before it came to its resting point facing east, the direction from which it had come.

In answer to a hypothetical question, an expert witness, Dr. Samuel Raff, testified that in his opinion the speed of the appellees' vehicle when it struck the appellants' vehicle was at least 90 miles per hour. The estimate was based primarily on the position of the appellees' vehicle, both at the point of impact and its resting place after the accident. His estimates were also based on basic principles of mechanics, including conservation of energy, momentum of impact, and the point of impact on appellants' vehicle.[1] Dr. Raff stated a vehicle travelling at a speed of 90 miles per hour covers 132 feet per second, and would cover a distance of 520 feet in slightly under four seconds. Dr. Raff also testified that his investigation of the accident scene revealed that "the top of headlights coming north on New Hampshire Avenue, a car coming in this direction is visible from the seat of a car" at the intersection for a distance of about 520 feet.

One Joseph Martin Coppinger, Jr. testified that for some time prior to Mrs. Roberts' arrival at the intersection, appellee Fairchild was operating a late model red Chevelle vehicle at high speeds, first southbound, then

---

1. It is argued on appeal the admission of this testimony was improper. Under our decision we do not reach the question.

northbound, and again in each direction before finally colliding with the Roberts' vehicle. The witness stated that about 15 minutes before the accident, he observed this red Chevelle pass the vehicle in which he was a passenger and proceed southbound on New Hampshire Avenue; the speed of the vehicle he estimated at approximately 100 miles per hour. A short time later as he was getting ready to go into his parents' house, Mr. Coppinger testified that he heard the car again, "the engine," and he decided to go up to New Hampshire Avenue to get the tag number, but while he was a second too late to do so, he did see the same red Chevelle headed south again on New Hampshire Avenue, travelling at an estimated speed of 100 miles per hour.

Mr. Coppinger testified he remained standing near the accident scene for about a minute or two and then saw the same red Chevelle come over the crest of New Hampshire Avenue northbound at a speed of 100 miles per hour and without decreasing its speed or changing lanes, proceed into the intersection of Oakview Drive, striking the Roberts' vehicle, and continue down New Hampshire Avenue for about 100 yards before coming to a stop against a guard rail. Just before the collision occurred, Mr. Coppinger testified that he saw the Roberts' vehicle come easterly on Oakview Drive, stop, proceed into the middle of the intersection, come to a second full stop, and start out again, when the red Chevelle, northbound on New Hampshire Avenue, came over the crest and hit appellants' vehicle.

Another eye witness to the speed of the Chevelle just before the accident was Paul Wolf, who had followed it over the crest of the hill of New Hampshire Avenue as it approached the intersection with Oakview Drive. About three-eighths of a mile back (or south) of the intersection, Mr. Wolf was driving his vehicle northbound at a speed of about 50 miles per hour when he noticed a red late model vehicle pass him at an extremely fast rate of speed. In his opinion, when the red Chevelle passed him at this point, its speed was about 110 or 115 miles per

hour. About five seconds later he arrived at the intersection where the dust from the collision was still flying.

The investigating officer testified that appellee Fairchild, after the accident, stated to him: he had been cut off by an unknown vehicle; he didn't know where the Roberts' vehicle came from; it just appeared and he hardly had time to hit his brakes. Fairchild also admitted to drinking about six beers prior to the accident. When questioned as to Fairchild's sobriety, the investigating police officer testified, "it was my opinion that Mr. Fairchild was under the influence of alcohol."

In the case of *Owens v. Creaser,* 14 Md. App. 593, 288 A. 2d 394, the opinion in which is filed today, we made an extensive review of the Maryland boulevard rule; so we will not prolong the present opinion with another comprehensive discussion. We also see no need to do so in the instant case because it is apparent from Mrs. Roberts' own testimony that she was guilty of contributory negligence as a matter of law. The boulevard rule requires two things of the unfavored driver. First, that he stop before entering the favored highway and second, that he yield to all traffic he finds within the intersection during the entire time he is crossing. *Oddis v. Greene,* 11 Md. App. 153, 157, 273 A. 2d 232. In the instant case, Mrs. Roberts stopped but she failed in her second duty to keep a lookout while proceeding through the intersection and to take evasive action when she saw, or should have seen, the approach of the favored vehicle. She testified that after her original stop before entering the boulevard, she crossed to the median strip and again stopped or almost came to a stop and looked to her right and saw no approaching traffic but that she did not continue to look and did not at any time see the car; she did not see the headlights approaching, nor hear the sound. According to the testimony of the other witnesses, if she had kept a careful watch she would have had several seconds to avoid the collision. The Court of Appeals has previously decided several cases which are factually similar to the instant case and has uniformly held the driver

of the unfavored vehicle guilty of negligence. In *Cooper v. Allen,* 243 Md. 9, 219 A. 2d 920, the Court found an unfavored driver negligent who failed to keep a lookout while proceeding through the intersection when he was struck by a speeding driver who was also under the influence of alcohol. See also *Cornias v. Bradley,* 254 Md. 479, 255 A. 2d 431, *Fowler v. DeFontes,* 211 Md. 568, 128 A. 2d 395, *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570 and *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661.

In *State v. Gosnell,* 197 Md. 381, 79 A. 2d 530, at 535, the Court said: "If the defendants were racing, and [the unfavored driver] saw them, or by the exercise of reasonable care and caution could have seen them in time to prevent the accident as he proceeded across the highway, but did not do so, and the collision resulted, [the unfavored driver] was guilty of contributory negligence as a matter of law." The Court found that the unfavored driver should have seen the headlights of the racing cars as they rounded a curve over a thousand feet from the intersection and there was no evidence that the unfavored driver continued to look after he left the stop sign and began to cross the dual highway. As the Court said in *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526, "a glance will not suffice." Although the appellants argue that in the present case, Mrs. Roberts did more than glance, her testimony shows that after she left the median strip, she failed to maintain any lookout for oncoming traffic and did not see the vehicle which struck her. We therefore hold, the trial judge quite properly granted a motion for a directed verdict and ruled as a matter of law that Mrs. Roberts was guilty of contributory negligence which barred her recovery.

Appellants further argue the doctrine of last clear chance is applicable under the facts of the instant case. We discussed last clear chance, in so far as it currently applies in Maryland, in *Oddis v. Greene, supra,* and pointed out for the rule to apply the acts of negligence must have been sequential and not concurrent. In the in-

stant case, Mrs. Roberts' negligence continued up to the moment of the accident in her failure to keep a lookout for approaching traffic and therefore was concurrent with that of Fairchild.[2]

*Judgments affirmed.*
*Appellants to pay the costs.*

---

**2.** In view of our decision, there is no need for us to discuss the cross appeal.