# WILLIAM LEO JENKINS ET AL. v. CHARLES COUNTY BOARD OF EDUCATION ET AL.

[No. 599, September Term, 1973.]

*Decided April 19, 1974.*

2

The cause was argued before ORTH, C. J., and MORTON and MENCHINE, JJ.

*Hugh E. Donovan,* with whom was *Edward C. Donahue* on the brief, for appellants.

*Kevin J. McCarthy,* with whom were *Willard G. Hoeltzel* and *Sasscer, Clagett, Channing & Bucher* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

On February 23, 1973 a sand and gravel truck owned by Charles County Sand and Gravel, Inc. and operated by William Leo Jenkins (appellants) was proceeding in a southerly direction on State Route 5. A school bus owned by the Hughesville Motor Co., Inc., under contract to the Charles County Board of Education and operated by Peter Burt Thomas (appellees) was proceeding in a westerly direction on State Route 232. State Route 5 is a four lane highway with two lanes northbound and two lanes southbound separated by a grass median. In addition right and left turn lanes are provided at the intersection. State Route 232 is a standard two lane highway — one for eastbound, the other for westbound traffic. The intersection is controlled by a flashing amber traffic light facing traffic moving upon State Route 5 and a flashing red traffic light facing traffic moving upon State Route 232. The vehicles were in collision within the intersection. A number of children, passengers on the school bus, were injured in the

crash. They instituted suits against appellants and appellees. Appellees filed a cross-claim against appellants.

After appellees effected settlements with all original plaintiffs [1] they brought their cross-claim to trial before a jury in the Circuit Court for Charles County (James C. Mitchell, J. presiding). At the conclusion of the cross-plaintiffs' (appellees here) case, the trial judge found that Jenkins was not guilty of contributory negligence as a matter of law and granted cross-defendants' (appellants here) motion for directed verdict. The cross-plaintiffs, in lieu of appeal to this Court, elected to pursue the remedy available to them under the provisions of Article IV § 22 of the Constitution of Maryland after reservation of the question for consideration by the court in *banc* Rule 510. The court in *banc* passed an order "that the Trial Court's granting of the Motion for Directed Verdict in favor of the Appellees, Charles County Sand and Gravel, Inc., and William L. Jenkins, be and the same is hereby reversed, and that the case be remanded for new trial." Its opinion stated, *inter alia,* that "the sole issue reserved for this appeal is whether the Trial Court was correct in ruling as a matter of law that the driver of the dump truck was not contributorily negligent." [2]

---

**1.** The original plaintiffs in all cases intervened in the proceedings below but have merely a nominal interest in the cause by reason of the settlement of their claims. The parties have stipulated that all settlements were fair and reasonable.

**2.** The case reaches this Court in a most unusual posture. The order of the court in *banc* reversing the trial court's grant of a motion for directed verdict, remanded the case for a new trial in the light of its decision. Thus, the present appeal is, in a strict sense, not an appeal from a final judgment. The point was not raised here by either party, and because the decision of the trial court plainly was reached upon an issue of law determinative of the respective rights of the parties, we will consider and rule upon that issue in this appeal. In doing so we note that the constitutional provision for appeals from decisions of the court in *banc* provides: "Such decision in *banc* should not preclude the right of Appeal, or writ of error to the adverse parties, in those cases, civil or criminal, *in which appeal, or writ of error to the Court of Appeals may be allowed by law.*" [Italics supplied] We specifically do not reach in this case the issue whether a party aggrieved by a decision of a court in *banc* (who was not the party appealing to it) would have standing to appeal to this Court, if the effect of the trial court's original order was not dispositive of the action at that level. In the subject case, however, the cross-plaintiffs (appellees here) had presented all available evidence bearing upon the issue of appellants' contributory

The appellees' cross-claim had alleged alternatively that the negligence of appellants was such as to render them solely or jointly liable for all damages resulting from the collision. At the trial below, however, appellees conceded their own negligence, limiting their claim against appellants to contribution of a pro-rata share of such damages as a joint tortfeasor under the provisions of Article 50, § 17 (a). Such a concession was, of course, mandated by the decided cases.

A motor vehicle approaching a flashing red light at a highway intersection is bound by the rules of law relating to "boulevards." A failure by its operator to stop and yield the right of way is negligence as a matter of law. *State, u/o Hopkins v. Marvil*, 202 Md. 592, 98 A. 2d 94; *Harper v. Higgs*, 225 Md. 24, 169 A. 2d 661; *Cornias v. Bradley*, 254 Md. 479, 255 A. 2d 431; *Roberts v. Fairchild*, 14 Md. App. 612, *affirmed by per curiam opinion*, 287 A. 2d 778; Code Article 66½, § 11-204.

Accordingly, the single issue before us is whether the evidence was legally sufficient to permit a finding that appellant Jenkins, the favored driver, was himself guilty of contributory negligence that was a proximate cause of the collision. The trial judge determined as a matter of law that it was not. The court in *banc* determined that the evidence was sufficient to raise a question of fact for the jury's resolution. In our review we are required to assume the truth of all evidence tending to sustain the claim of the appellees, as well as all inferences reasonably and fairly deducible therefrom. *Local 75 v. Regiec*, 19 Md. App. 406, 407, 311 A. 2d 456, 457, and cases therein cited. So viewed, the evidence would permit the finding of the following facts.

The testimony of Corporal Teffeau of the Maryland State Police was extremely limited in extent. He testified that he investigated an accident at State Routes 5 and 232; that the intersection was controlled by a double flashing amber light for State Route 5 — a double flashing red light for State

negligence and the trial court had found the appellants to be without fault as a matter of law. In sum, the appellants here had obtained a decision in the trial court that — subject only to a successful appeal by the appellees — would be conclusive of the latters' claim.

Route 232; that Route 5, a straight road running north and south, is a dual lane highway with two lanes of traffic in each direction, separated by a grass median, with added left and right turn lanes at the intersection; that State Route 232, running east and west, is a highway with a single traffic lane in each direction; that the colliding vehicles were respectively, a 1970 Mack dump truck operated by Jenkins on Route 5 and a school bus operated by Thomas on Route 232.

Cross-plaintiffs then called Jenkins as a witness. His brief personal testimony was limited to inquiries related to his identity, the identity of the vehicle he operated on the accident date; the direction of his travel; and the fact that he was within the employment of the Charles County Sand and Gravel Company at the time. Cross-plaintiffs then offered in evidence the deposition of Jenkins. It is to that deposition one must look for *all* facts relating to the collision. Thomas, driver of the school bus, was not called as a witness.

Jenkins (favored driver) was operating his truck in a southerly direction on State Route 5 in the slow lane. He observed a Greyhound bus stopped on the right shoulder of the highway, about 50 feet from the intersection with Route 232. The left turn indicator of the Greyhound bus was blinking. Jenkins directed his attention to the stopped vehicle because "this Greyhound bus had a left hand signal on to pull to the road and I was slowing down thinking that he was going to pull over." Jenkins continued in the slow lane past the Greyhound bus, explaining that "I did not move to the fast lane because he had never pulled out." He did not blow his horn. He said: "As I went by the [Greyhound] bus, then I could look. I looked and then I saw the school bus coming across." Jenkins had not seen the school bus crossing the northbound lanes of Route 5. He explained he did not see that movement because he was "looking at the Greyhound" because he thought "the man was going to pull into [my] lane * * * they usually do if they put on a signal." The truck's speed at the time the school bus first was seen was 35 miles per hour and was slowing. The posted speed limit for Route 5 was 50 miles per hour.

Jenkins conceded that he could have seen the school bus earlier but for the fact that his attention had been directed to the Greyhound bus.

A diagram, drawn by Jenkins during his deposition testimony, was admitted as cross-plaintiffs' exhibit 1 and is reproduced herein.

South

Jenkins placed marks upon the diagram to indicate the following:

X - Position of Greyhound bus;
C - Position of Jenkins where he observed Greyhound's left turn blinker;
A - Position of Jenkins when he first saw school bus;
B - Position of school bus when Jenkins first saw it.

He saw the school bus when he was 50 feet from the intersection with Route 232. The relative position of the two vehicles at that time is shown by the letters A (truck) and B

(school bus) on the diagram. The school bus continued to move past the median strip and across the southbound lanes of Route 5 and the vehicles collided.

*State, u/o Hopkins v. Marvil, supra,* was the first Maryland decision delineating the duty owed by a traveler upon approach to crossing highways controlled as to one by flashing red lights and as to the other by flashing amber lights. The Court of Appeals said at page 598, *et seq.* [97]:

> "The legislature has enacted Article 66½, Sec. 160, *Annotated Code of Maryland* (1951) which reads as follows:
>
> '(Flashing Signals). Whenever flashing red or amber signals are used they shall require obedience by vehicular traffic as follows:
>
> (1) Flashing red (Stop Signal). When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
>
> (2) Flashing amber (Caution Signal). When an amber lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution.'
>
> The above statute prescribes separately the rule of conduct for drivers facing flashing red and amber signals at an intersection, but the existence of the red light for the one determines to a degree the caution to be exercised by the other who is confronted with the amber light. Cases dealing with this subject matter are to be found in other jurisdictions. While not expressly spelled out in all, there is implicit in most of them the theory that a driver on a through street when approaching an intersection controlled by amber and red flashing signals must exercise a caution commensurate with the prudence of a reasonable man — that he has not

absolute right of way. See *Rhoades v. Finn,* 288 Mich. 262, 284 N. W. 720; *McGowan v. City of Los Angeles* and two related cases, 100 Cal. App. 2d 386, 223 P. 2d 862, 21 A.L.R.2d 1206; *Stabler v. Copeland,* 304 Mich. 1, 7 N.W.2d 122.

*When the State has erected an amber signal to regulate traffic on a through highway, we think it not unreasonable to find its purpose is to exact from the users of a highway a caution higher than is to be expected in the absence of such a signal. So to hold does not diminish or render ineffectual the utility of the modern through highway. Nor does it mean that a user of the highway cannot assume that drivers will stop in compliance with stop signs. It means merely that one should not proceed through such an intersection oblivious to it.* It does mean, as the statute plainly says, that an amber light is a warning to proceed cautiously, and if the facts show that an accident has occurred due to a failure to take heed of such an admonition, when a collision could have been averted by exercising caution, then liability may be imposed upon the user of the favored artery. While the driver on the main artery may ordinarily rely on the vehicle approaching from his right or left stopping as required by the red light, yet if the circumstances indicate that the approaching vehicle will not stop, then a duty arises on the part of the favored driver to avoid an accident if he can. He cannot proceed in complete disregard of obvious danger." (Italics supplied)

It is pertinent and significant here that in *Marvil, supra,* there was evidence to establish that the driver upon the favored highway "had a clear and unobstructed view of travelers on Route 331, for 495 feet east of the intersection, and when 275 feet south of the intersection, the same vision of travelers on Route 331, for 830 feet east of the intersection." (at page 596 [96]) and that "He [favored driver] readily admitted that he had not looked up or down

Route 331, but that he had confined his attention to the stretch of road in front of him." (at page 598 [97]).

Nonetheless, the Court of Appeals in *Marvil* rejected the claim of personal representatives of a deceased passenger in the unfavored vehicle, holding as a matter of law, that "* * * the proximate cause of the collision was Gosnell's [unfavored driver] violation of the stop signal." (at page 600 [98]).

Appellees heavily rely upon *Harper v. Higgs, supra.* We do not find that case to support their claim to contribution from appellants. It is true that *Harper* involved a collision at an intersection controlled by flashing red and amber lights. It is true also that a passenger in the unfavored vehicle was permitted to recover against the favored driver. That recovery was allowed however, only because the Court of Appeals thought that "the instant case presents one of those rare instances in which the conduct of the favored driver was properly subject to a jury's determination of its reasonableness and prudence under the circumstances." (at page 34 [665]).

In *Harper* it was pointed out at page 35, *et seq.* [665, *et seq.*]:

"There was evidence below which, if believed by the jury, would have permitted, without 'nice calculations,' a finding that the Hurry car stopped at the intersection as the law requires and started across when there was no through traffic to which it was required to yield the right of way, that it traversed some twenty to twenty-five feet from a standing start and stood stalled under the blinker light for an additional five or more seconds before the collision, and that all during this time Mrs. Harper continued to approach at an undiminished speed without observing the road ahead and that when her passenger 'hollered' that the Hurry car would hit them, Mrs. Harper did not even know another car was around and had to cry out 'where,' just as the two cars hit.

Mrs. Harper had a duty, imposed by the flashing amber light, to proceed through the intersection 'only with caution.' This, even on her own evidence, she did not do. She had the correlative duty, in the words of *Marvil*, 'if circumstances indicate that the approaching vehicle will not stop * * *' to avoid the collision, if she could. The circumstances here not only indicated to the passenger in the Harper car, who did look, that the Hurry vehicle was going to enter the intersection but included one of the very things *Greenfeld v. Hook* said could endanger an unfavored driver who entered a boulevard without negligence, that is, 'some defect in the motor' which prevented control of the car. As in the *Sun Cab* case, the favored driver, Mrs. Harper, according to the testimony of her passenger, was completely inattentive to what was ahead in the road because she was so busy talking she did not look until yelled at just before the then inevitable collision. Without any 'nice calculations of time, speed and distance,' the jury could have found from all the testimony that if Mrs. Harper had kept a proper lookout she would have seen the Hurry car *in its position of obvious peril* in time to have avoided it by stopping, or otherwise. The rule that the favored driver is not made negligent by failing to look is not controlling because here *Mrs. Harper would not have been entitled to rely on the usual assumption that the unfavored car would not come into the boulevard because of the evidence it already had come in and stalled.*" (Emphasis added.)

The most recent "flashing light" decision is *Roberts v. Fairchild, supra.* Although *Roberts* dealt exclusively with the issue of the negligence of the unfavored driver, we redeclared that flashing light cases are to be equated with "boulevard" cases and restated the rule of law that controls the movement of an unfavored driver across a favored highway. We said at page 617 [781]:

"The boulevard rule requires two things of the

unfavored driver. First, that he stop before entering the favored highway and second, that he yield to all traffic he finds within the intersection during the entire time he is crossing."

See also: *Cornias v. Bradley, supra,* page 492 [437].

There has been no retreat from that principle. In *Creaser v. Owens,* 267 Md. 238, 297 A. 2d 235, the Court of Appeals said at page 243 [238]:

"The essence of these [boulevard] decisions, when distilled to their purest form, leaves no doubt that the duty of the unfavored driver to yield the right of way extends to traffic on the whole of the favored road *and the driver on the favored highway has a right to assume that he will do so.*" (Italics supplied.)

This Court in *Tippett v. Quade,* 19 Md. App. 49, 309 A. 2d 481, said at page 61 [489]:

"If the contention is that the favored driver could have avoided the collision but for inattention to his driving and to the peril which immediately confronted him on the roadway, there must be positive evidence of such inattention or lack of due care. * * *"

In the subject case the cross-plaintiffs offered no evidence whatever as to the movements of the school bus. The uncontradicted evidence — introduced by themselves — included a reasonable, full and complete explanation by the favored driver as to why he did not earlier observe the unfavored vehicle. The diagram, prepared and marked by the favored driver, also offered in evidence by the appellees, demonstrates that even at the point of his first observation, the favored driver had no basis for a belief that the unfavored vehicle would be driven into the path of his vehicle. He was entitled to assume that the right of way would be yielded by the school bus. Having introduced such evidence, the appellees are bound by it in the absence of contrary evidence. *Pratt v. Coleman,* 14 Md. App. 76, 286 A. 2d 209.

In short, the evidence produced by the cross-plaintiffs (a) failed affirmatively to show inattention or lack of due care on the part of the favored driver and (b) left completely unexplained the unfavored driver's failure to yield the right of way as required by law. We find that this is not "the rare case when the issue of contributory negligence on the part of the favored driver is properly submitted to a jury." *Creaser v. Owens, supra,* at page 245 [239].

As in *Marvil, supra,* the proximate cause of this collision was the negligence of the unfavored driver. Here, as there, it would require sheer speculation for a jury to declare that the favored driver's conduct was a contributing cause to the collision. There is simply no doubt that had the unfavored driver yielded the right of way this collision would not have occurred. On the facts shown by this record Jenkins had the right to assume that the school bus, in a place of safety by the grass plot, would remain there and yield the right of way. *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, 278, 78 A. 2d 647, 649.

The trial judge properly granted appellants' motion for a directed verdict. The court in *banc* was in error in its reversal and remand.

> *Order of the court in banc reversed and case remanded for entry of judgment for the appellants.*
>
> *Costs to be paid by the appellees.*