700 A.2d 821

Stacy L. AZAR,

v.

Ebony K. ADAMS, a minor, etc., et al.

No. 1875, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Sept. 25, 1997.

William N. Zifchak (Sasscer, Clagett & Bucher, on the brief), Upper Marlboro, for appellant.

Neil J. Bixler (Robert C. Verderaime and Verderaime & DuBois, P.A., on the brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and MOYLAN and CATHELL, JJ.

CATHELL, Judge.

Stacy L. Azar appeals from the judgment by an *in banc* panel of the Circuit Court for Wicomico County that reversed a trial court's grant of her motion for judgment at the conclusion of appellee's case. The trial court had granted her motion based upon its finding, that, as a matter of law, appellee, Ebony K. Adams, had been contributorily negligent.

## FINALITY OF IN BANC PANEL'S ORDER

Before addressing the determitive issue, we must resolve appellee's claim that the case, as presented to this Court, lacks finality. That claim is without merit. Appellee argues that because she prevailed before the *in banc* panel on the issue of contributory negligence, the issue of primary negligence remains to be resolved and, therefore, there is no final judgment. Appellee fails to realize that finality is determined by the status of the case at the conclusion of the trial court proceeding, not at the conclusion of the *in banc* panel proceeding. The *in banc* panel sits to review the findings of the trial court and, as such, sits in an appellate capacity. We review both the correctness of the *in banc* panel's decision and the trial court's finding. We explain.

The question of the finality and appealability of the decisions of circuit court *in banc* panels was discussed in *Board of License Comm'rs v. Haberlin*, 320 Md. 399, 403, 578 A.2d 215 (1990). In that case, the Court was presented the same question as is presented by appellee, albeit the factual situation was somewhat different. Although the Court in *Board of License Comm'rs* ultimately held the *in banc* panel lacked

jurisdiction in the first instance, it nonetheless held that the decisions of such panels are final and appealable. Judge Eldridge, for the Court, stated:

> The appellees assert that the in banc court judgment is not final because it did not terminate the circuit court proceedings in this case.... We have today filed our opinion in *Dabrowski v. Dondalski*, 320 Md. 392, 578 A.2d 211 [ (1990) ], which holds that the Court of Special Appeals erred in dismissing the appeal in that case and which vacates the judgment of the Court of Special Appeals. For the reasons set forth in our *Dabrowski* opinion, and in *Estep v. Estep*, 285 Md. 416, 420–421 [404 A.2d 1040] (1979), it is clear that the judgment of the in banc court was final and appealable.

*Haberlin*, 320 Md. at 403, 578 A.2d 215 (footnote omitted). In *Dabrowski v. Dondalski*, 320 Md. 392, 395–96, 578 A.2d 211 (1990), the Court of Appeals stated:

> It is clear that the decision of the court in banc was a final order appealable to the Court of Special Appeals.... Our decision in *Estep v. Estep*, 285 Md. 416, 420–421 [404 A.2d 1040] (1979), is depositive.... In *Estep* ... this Court ... stated:
>
> ....
>
> "If, as petitioner has suggested, the Court of Special Appeals dismissed the appeal to it as interlocutory because the court in banc, after reversing the circuit court's decision, remanded the case for further action on the respondent's petition for modification, such a ruling ... would be in error.... [T]he court in banc acts only as an appellate tribunal so that its decisions are not those of a reconsidering trial court but are reviewable as final appellate judgments." [Citations omitted.]

*See also Estep v. Estep*, 285 Md. 416, 421, 404 A.2d 1040 (1979) ("[T]he court in banc acts only as an appellate tribunal so that its decisions are not those of a reconsidering trial court but are reviewable as final appellate judgments." (footnote omitted)); *Green v. State*, 96 Md.App. 601, 606, 626 A.2d 975 (1993)

("An *in banc* panel is regarded as an appellate body, separate from the circuit court that rendered the decision under review, because the proceeding before it is a substitution for the direct appeal to this Court.").

Just as a decision of this Court, reversing or vacating a trial judge's grant of such a motion, would not affect either the finality of the original trial court order or the ability of a party before us to seek certiorari from the Court of Appeals, the *in banc* court's decision did not affect the finality of the trial court's judgment nor does it limit this appellant's ability to present these issues for our review.[1] It is clear that the *in banc* court's decision in this case is appealable.

## RESOLUTION

We shall now review the *in banc* court's holding and the trial court's finding. In that respect we perceive that this case is in an unusual posture.

At the *in banc* court proceeding, the parties proceeded on appellee's Petition and Memorandum, Respondent's (appellant's) Memorandum of Argument, and the oral arguments of both parties. Appellee asserts, and appellant does not reply otherwise, that there was no trial transcript presented to the *in banc* panel. Accordingly, the *in banc* court relied solely on the petition, the response, and the oral arguments of the parties. Our appellant, however, has included in the extract before us a trial transcript, or portions of one, upon which she and the current appellee base portions of their arguments before this Court. Inexplicably, appellant has not included a transcript of any part of the oral arguments before the *in banc* panel. To compound the problem, the *in banc* panel, in its resolution, proffered no reasons for its holding that the trial court had erred in granting appellant's motion for judgment.

Normally, we might be required to next address whether we are limited in our review of the *in banc* court's decision, to the

---

1. The current appellant was the appellee before the *in banc* panel.

material presented to it, or whether it is appropriate for us to expand our review to include evidentiary matters not presented to, and thus not considered by, the *in banc* court. In this regard we have found no prior cases delineating or limiting the scope of our review. There are several general statements, in addition to those mentioned above, that could be liberally construed to require this Court to treat appeals from *in banc* courts in the same way as appeals from this Court to the Court of Appeals are governed by the Maryland Rules and the cases. Because these statements are dicta, and only of marginal applicability here, they offer little guidance.

In *Washabaugh v. Washabaugh,* 285 Md. 393, 399, 404 A.2d 1027 (1979), the Court of Appeals noted:

Although the proceeding before a court in banc tends to be informal, the case usually being submitted on the record without filing formal briefs or record extracts ... at present Rule 510b [2] does require the submission of a written exception *fully presenting* the law and *the facts* concerning the reserved issue to the trial judge for his signature. After a point or question has been properly reserved ... it can be abandoned ... [so long as the in banc court has not made its determination], but once a determination is made by the court in banc, its decision is final as to the party who sought review by that court. This is not the case with the nonmoving party, however, for he is entitled to *further* appellate review *of a decision of the court in banc* that is adverse to his interests. [Emphasis added; citations omitted.]

In discussing its certiorari role in the *in banc* court appellate process, the Court of Appeals in *Estep* noted:

There being no statutory provision relating to section 22's grant of an appeal of right to the nonmoving party who loses before a court in banc, such an appeal would necessarily have to conform to the normal appellate procedure established by the legislature and thus be taken to the Court of

---

2. Maryland Rule 2–551 replaced former Rule 510.

Special Appeals, with this Court exercising jurisdiction only upon the issuance of a writ of certiorari.

285 Md. at 420–21 n. 4, 404 A.2d 1040

In *Buck v. Folkers,* 269 Md. 185, 187, 304 A.2d 826 (1973), the Court of Appeals stated: "Obviously, in the limited area of permissible appeal to this Court, the parties must comply with the Maryland Rules of Procedure governing such appeals." Maryland Rule 2–551(h), provides simply that "the decision of the [*in banc*] panel does not preclude an appeal to the Court of Special Appeals by an opposing party who is otherwise entitled to appeal."

This rule does not resolve the quandary, *i.e.,* are we, when reviewing a decision of an *in banc* court, limited to the record presented to the *in banc* court, or may we consider the transcripts, pleadings, and evidence from the trial court proceedings. We have found no rule governing the scope of our review of an *in banc* court's action. An *in banc* court is, however, an appellate tribunal. It is subordinate to this Court just as we are subordinate to the Court of Appeals. When the appellate process commences via the *in banc* court route, that court is, as to this Court, in the case where an appellee at the *in banc* level files a further appeal, an intermediate appellate court. That fact, however, also offers little help in resolving what it is that we are reviewing and what constitutes the record upon which our review is to be based. The issue is whether our review is limited to the record before the *in banc* panel or whether we may review the entire record of the trial court proceedings.

In one of our relatively recent cases, we were called upon to discuss the nature of an appeal to an *in banc* panel from a trial court that had reviewed a decision of an administrative agency and had reversed the agency's decision. We noted in *General Motors Corp. v. Bark,* 79 Md.App. 68, 70–71, 555 A.2d 542 (1989):

At every level reached on this escalator of judicial review, it is necessary to identify the appropriate standard of

review. As we look down one stage [3] to the decision of the *in banc* panel, identifying the standard is easy. The *in banc* panel was enjoined to examine the decision of Judge Hammerman exactly as we would be constrained to examine it, had the appeal been taken directly to us.[4]

An appeal to an *in banc* panel is an alternative avenue of appellate review. The forum may be different, but the restraints upon the process are the same. Neither the *in banc* panel nor we may relevantly ask whether we would have reached the same decision as that reached by the circuit court. Neither it nor we have any independent or *de novo* fact-finding responsibility or prerogative. As to fact finding, we should both be concerned only with whether Judge Hammerman was legally in error. The *in banc* panel held that he was; we hold that he was not. That difference ... is the result of our differing views as to the proper standard of review that Judge Hammerman should have employed, in the first instance, in handling the appeal from the Workers' Compensation Commission. [Citations omitted.]

As can be seen, *Bark* addresses the standard of review of *in banc* panels reviewing decisions of trial courts that are themselves sitting in an appellate capacity, *i.e.*, an appeal of administrative agency actions. It does not resolve the present question. Do we review the actions of the *in banc* court on the record before it, or do we review the findings of the trial court on its record?

Thankfully, we need not now resolve that difficult question. We perceive that if we are reviewing the decision of the *in banc* court on either the evidence before it or the evidence as supplemented by additional portions of the trial court record

---

**3.** In the case *sub judice* we are looking up one stage. The standard of review "up" a stage may well be different then the standard "down" one stage.

**4.** This does not answer how we are to conduct our review when the appeal, as in the case at bar, is not directly to us, but indirectly with the intermediate step of the *in banc* review.

presented to us, its decision was appropriate. Alternatively, based upon the portions of the trial court record presented in the extract, if we are merely repeating an appellate review of the trial court's action, we hold that it erred in granting appellant's motion for judgment. We shall explain after we very briefly discuss the law in regard to the granting of motions for judgment.

 We stated the proper analysis a trial court should undertake in ruling on motions for judgment in *James v. General Motors Corp.,* 74 Md.App. 479, 484–85, 538 A.2d 782, *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988):

> [W]hen ruling on a motion for a judgment the trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, *in the light most favorable to the party against whom the motion is made.* If there is any evidence, no matter how slight, legally sufficient to generate a jury question, the motion must be denied.... An appellate court reviewing the propriety of the grant or denial of a motion for judgment by a trial judge must conduct the same analysis. [Emphasis added; citations omitted.]

Thus, if there are any disputed issues of fact, Maryland Rule 2–519 precludes the trial court from resolving them, unless there is no jury. *See Garrison v. Shoppers Food Warehouse,* 82 Md.App. 351, 354, 571 A.2d 878 (1990).

The documents before the *in banc* court included assertions that lend support to the position of that tribunal. In appellee's Petition to the *in banc* court, she made certain assertions. She stated that she was familiar with the area in question and the intersections at issue that were controlled by traffic signals. On the day in question, prior to the accident, she properly crossed the divided multilane highway at the intersection controlled by a traffic signal by using the crosswalk. She then proceeded approximately midblock to a local store. Because she wanted to take a quicker route home after she left the store, she proceeded to the edge of the road to cross there and avail herself of a more direct route. Prior to

crossing at midblock, where there was no crosswalk, she looked to her left in the direction of the southbound oncoming traffic before commencing to cross to the center turn lane for north and south bound traffic (but not a turn lane for crossing traffic). She also observed no northbound traffic close enough to cause her any concern for her safety. She observed that the southbound, oncoming traffic was stopped by the traffic signal. That traffic was, in fact, stopped at that stop light. Appellee concluded that it was, therefore, safe for her and her brother to cross at midblock. She then began to cross the road.

As she was crossing, appellant's car was on the other side of the highway. The car was stopped at the exit from a Burger King located on the opposite side of the highway. Appellant's car was sitting at a right angle to the highway and had no directional signals indicating that it was about to cross the northbound lanes of the highway and make a left turn onto the southbound lane. At this point, the point when appellee began to cross the highway, there was nothing to indicate that it was unsafe to do so. Appellant's car was not even on the roadway. According to all of the evidence, there was, at that time, no oncoming traffic.

Appellant was at the exit driveway from the Burger King when appellee began to walk across the road. She looked to her left and right and then left the Burger King and proceeded across the northbound lanes into the center of the highway. At that point, appellant directed her attention to the right, towards the direction of any possible southbound traffic. Determining, as had appellee, that there was no southbound traffic so close as to impede her left turn onto the southbound lanes, appellant proceeded to her south and struck appellee, whom she had not seen prior to the point of impact.

The statement of facts in appellant's brief before this Court contains no additional substantial factual distinctions. Accordingly, whether we are limited to the evidence before an *in banc* panel when a subsequent appeal is taken is, under the circumstances here present, of little consequence. We can

resolve this case without resolving those issues we have mentioned relating to the nature of the review process.

Appellant here bases her entire argument on a line of cases holding that "pedestrians who are struck outside of crosswalks by vehicles which they fail to look for or see are guilty of contributory negligence as a matter of law." She cites *Dix v. Spampinato*, 278 Md. 34, 358 A.2d 237 (1976); *United States Fidelity & Guar. Co. v. Royer*, 230 Md. 50, 54–55, 185 A.2d 341 (1962); *Campbell v. Jenifer*, 222 Md. 106, 159 A.2d 353 (1960) and other cases in support of her contention. Appellant is correct as to the cases that so hold.

■ As we perceive the instant case, however, there remained a factual issue for the trier of fact. Under these specific circumstances, there was evidence that appellee looked in every direction possible. She contemplated the possibility of oncoming traffic and ascertained that there was none. Should she have known that a vehicle stopped at the exit driveway of a fast food restaurant across the street, with no directional indications apparent, was about to cross two northbound lanes and a center turn lane and then proceed in a southerly direction? Under these circumstances, a trier of fact could have determined that, at the point where appellee began to cross the highway, there was no oncoming traffic that had the right-of-way. At that point, appellant was not even on the highway. At that point, a reasonable fact finder could have concluded that appellee was not contributorily negligent by reason of any failure to yield.

In *Jenkins v. Charles County Bd. of Educ.*, 21 Md.App. 1, 318 A.2d 250 (1974), a case involving the right-of-way as between favored and unfavored vehicles, the substantive issue was whether the favored driver was contributorily negligent. We held that the facts in that case did not make it " 'the the rare case when the issue of contributory negligence on the part of the favored driver is properly submitted to a jury.' " *Id.* at 12, 318 A.2d 250 (quoting *Creaser v. Owens*, 267 Md. 238, 245, 297 A.2d 235 (1972)). While in the instant case the factual reverse of *Jenkins* exists in that the issue is whether

the alleged contributory negligence of the nonfavored party should have been submitted to the jury, our comments in that case are of some relevance.

In *Jenkins,* a Greyhound bus was approaching an intersection on the shoulder with its left turn signal operating. It had a green light. Jenkins, traveling in the right hand lane, proceeded past the Greyhound bus, intending to go on through the intersection on the green light. As he cleared the Greyhound bus, he saw for the first time that a school bus was proceeding from his left against the red signal through the intersection. Jenkins's truck and the school bus collided. The trial judge granted Jenkins's motion for a directed verdict that Jenkins was not contributorily negligent as a matter of law. The Board of Education appealed to an *in banc* panel. The panel reversed the trial judge, and we, in turn, reversed the in *banc panel.* In doing so we made certain statements relevant to the factual situation that confronted appellee in the case *sub judice.* We said:

> [E]ven at the point of his first observation, the favored driver had no basis for a belief that the unfavored vehicle would be driven into the path of his vehicle....
>
> ....
>
> ... On the facts shown by this record Jenkins had the right to assume that the school bus, in a place of safety by the grass plot, would remain there and yield the right of way.

*Id.* at 11–12, 318 A.2d 250.

The case *sub judice* is, moreover, distinguishable from *Dix v. Spampinato,* 278 Md. 34, 358 A.2d 237 (1976), and the line of cases mentioned therein. In *Dix,* there was no evidence that the pedestrian crossing between crosswalks attempted to observe oncoming traffic. The plaintiff crossed the first lane of a highway after one of the defendants, Mrs. Horak, had given a hand signal to do so. As the plaintiff crossed the lane, she was struck by Mrs. Spampinato's car. The Court of Appeals, in regard to the plaintiff's negligence, stated:

"This Court has often held it to be contributory negligence as a matter of law for a pedestrian to leave a place of safety for a position of peril between street crossings, thereby contesting the right of way of vehicular traffic *then in the street.*" *Vokroy v. Johnson,* 233 Md. 269, 273–74 [196 A.2d 451] (1964); see also *Leonard v. Hanson,* 225 Md. 76, 79 [169 A.2d 459] (1961); *Campbell v. Jenifer,* 222 Md. [106,] 111 [159 A.2d 353 (1960) ].

Miss Dix attempts to skirt the rule of these cases by her contention that because Mrs. Horak stopped the Volkswagen bus and waived Miss Dix on, Mrs. Spampinato should have been alerted by this circumstance, but instead did nothing to avoid hitting Miss Dix. The fallacy in this argument is that Miss Dix, by her own testimony, admitted that she never saw Mrs. Spampinato's car, *which can only mean that Miss Dix either never looked or did not see when she did look before she left a place of safety* in front of the Volkswagen bus, *Henderson v. Brown,* 214 Md. 463, 472 [135 A.2d 881] (1957).

*Dix,* 278 Md. at 37–38, 358 A.2d 237 (emphasis added). The Court ultimately held that, on the facts presented, Mrs. Horak's conduct did not present a jury question.

In *Boyd v. Simpler,* 222 Md. 126, 158 A.2d 666 (1960), the accident took place on the main street of a small town when a highly intoxicated driver was operating a vehicle at an estimated speed of 45 to 65 miles per hour. The victim should have been clearly visible to him before he hit her. This Court, speaking through Judge (later Chief Judge) Prescott, said:

The above does not describe a situation where the pedestrian was disputing a motorist's right of way; Mrs. Boyd was unquestionably using every means at her command to accord the motorist the right of way, irrespective of whether she or the defendant had it at the point of collision.

We have pointed out above that the statute creates no presumption of negligence on the part of a pedestrian crossing between intersections, although it does place upon the pedestrian the duty of exercising a great amount of care

for his own safety. And we are unable to conclude that persons of ordinary and reasonable minds would all agree that Mrs. Boyd's standing in the highway talking to her friend, under the circumstances described above, or her attempt to reach safety, constituted negligence upon her part.

*Id.* at 132, 158 A.2d 666.

In the present case, once appellant turned left into the southbound lanes, she, at that point, had the right-of-way; until that time, she was entitled to no right-of-way at all. She struck appellee almost immediately. At trial, a question may well have existed as to whether appellant sufficiently had achieved a favored status at that time so as to assert a right-of-way. In order to justify a finding of contributory negligence on the part of the appellee, it would be necessary to determine that appellee should have assumed appellant, whose vehicle was then stopped across a five-lane highway with no indication that it was going to exit across the northbound lanes and turn left into the southbound lanes, would do just that. That, however, is a severe burden to place on pedestrians.

Additionally, as we have indicated, there was ample evidence from which the trier of fact could have found that appellee did look for traffic with the right-of-way when she began to cross the road. At that point appellant, based upon the facts presented to this court, was not yet a favored driver because she was not then on the road. To reiterate, in *Dix*, Ms. Dix never looked. In the case at bar, appellee looked and saw that there were no cars traveling southbound, including appellant's.

■ We note that we are not persuaded that the long line of cases mentioned in appellant's brief, including *Whitt v. Dynan*, 20 Md.App. 148, 315 A.2d 122 (1974), create a per se contributory negligence rule anytime a pedestrian is attempting to cross a street between intersections containing crosswalks. As we perceive the case law, it imposes a burden on such pedestrians to look for and yield to approaching traffic that a pedestrian should see or be aware of. There may well

be, from time to time, instances where a pedestrian cannot, by due and required diligence, foresee that a vehicle will enter a highway and assert a precipitous right-of-way, as did appellant in the case at bar.

In these and in similar instances, a pedestrian may not be contributorily negligent. In this case we agree with the *in banc* panel that the issue of contributory negligence was for the trier of fact and was not determinable as a matter of law. Had the appeal been taken directly to this Court, the result would have been the same. We shall affirm the *in banc* panel's reversal of the trial court's granting of appellant's Motion for Judgment and remand the case for a new trial.

We have noted the interrelationship between appeals to *in banc* panels ("the poor man's [person's] appeal") and to this Court. Many interesting questions arise out of this relationship. What happens if one side appeals an issue to an *in banc* panel and the other side appeals the same or a different issue directly to this Court? Does the one prevail that gets to the courthouse first? If the different sides are appealing different issues, can each appeal to the tribunal of its choice, *i.e.*, can there be parallel appeals? If the appeals are taken on the same day, where does the case go?

In *Dobson v. Mulcare,* 26 Md.App. 699, 338 A.2d 898 (1975), during the trial itself, one party objected to the admission of expert medical testimony. The excepting party immediately reserved that issue for review by an *in banc* panel, but the trial continued until the jury reached a verdict. The *in banc* panel then reviewed the reserved question. Under those circumstances, even more interesting questions arise: Does the immediate reservation of questions during the trial itself affect the ability of either party, especially the nonreserving party, to appeal directly to this Court after the case is finally resolved at trial? Is it appropriate to make such an immediate reservation? Is it premature? If it is not premature, does the reservation divest the trial court of jurisdiction? What tribunal has jurisdiction? In *Dobson* we made no

comment on the unusual procedure utilized during the trial stage.

We have found no cases resolving the potential problems we have described in respect to further appellate review after *in banc* decisions. Luckily for this panel of this Court, we have been able to resolve this case without having to resolve those issues. We do note, however, that the use of *in banc* panels, in relation to earlier years, now occurs with some frequency. The matters we have not been required to address surely will be presented again. This area would appear to be one the Rules Committee may need to address.

**JUDGMENT OF THE *IN BANC* PANEL AFFIRMED; TRIAL COURT'S GRANTING OF PLAINTIFF'S MOTION FOR JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLANT.[5]**

---

**5.** Judge Truitt, during pretrial proceedings, had denied appellant's motion. The trial judge, in granting appellant's motion, commented that he had been a trial judge longer than Judge Truitt. Judge Truitt was a member of the *in banc* court. Neither party raised before us the propriety of Judge Truitt being a member of the *in banc* panel. At the time of the enactment of Article IV, section 22 of the Constitution, some and perhaps most circuits were comprised of three judges. The constitutional provision appears to permit the judge whose ruling is reserved to the *in banc* panel to be a member of the panel. Maryland Rule 2–551 directs that the trial judge not be a member of the panel. Neither provision provides a conclusive answer as to whether a judge who heard and decided pretrial motions on the identical issue should be on the *in banc* panel. As this issue was not raised, we shall leave Judge Truitt where we found him.